ELI B. WILLIAMS *et al.*

*v.*

JOSEPH O. BUTLER *et al.*

1. ATTORNEY — *his authority presumed.* In the absence of proof to the contrary, the authority of an attorney of this court to appear and plead for such parties as he claims to represent, is presumed.

2. SAME. If it be desired to raise the question of authority, it should be done in the court below and by affidavit.

3. AGENTS — *acts of* — *when acts of principal.* A subsequent ratification of the acts of an agent, has relation back to the time when the acts were done, and make those acts good from the beginning.

4. SAME — PARTNERSHIP. The creation of a partnership by an agent without authority, if ratified by the person so made a partner, establishes that relation, and will cut off the intervening rights of third persons, if the doctrine is applied for the protection of a superior equity.

5. SAME. A partnership being so established, all the incidents of such a relation follow, and the partnership assets must be first applied to the payment of the partnership debts.

APPEAL from the Superior Court of Chicago ; Hon. JOHN M. WILSON, Judge, presiding.

For a number of years, and up to some time in 1857, Strong Wadsworth and James Wadsworth carried on business as bankers, under the name of "Wadsworth & Co.," their place of business being at the corner of Clark and Randolph streets, Chicago. They failed in business, owing the plaintiff, Williams, about $8,000. In February, 1861, Strong Wadsworth renewed his former business at No. 34 Clark street. He leased the office in his own name, and twice renewed the lease in the same way. He took out a United States revenue license in his own name, and conducted the business in person, in the name of "S. Wadsworth & Co."

In December, 1862, Williams commenced suit against Strong Wadsworth and James Wadsworth upon his claim. Strong alone was served, and in March, 1863, judgment was rendered against him, impleaded, &c., for $9,385.53 ; an execution was issued, and on 1st April, 1863, the sheriff levied on his entire stock in trade, consisting of over $6,000 in current money, and the office furniture and fixtures, &c.

The next day after the levy, April 2, 1863, one Samuel C. Smith, who had been a clerk in the bank, made affidavit that he was agent for one Mercy Ambler, that she was owner of the property levied on, and sued out a writ of replevin. The sureties on the replevin bond are the above named defend-

ants in error, Rutter, Tyler and Belden. By virtue of that writ, the coroner took from the sheriff the office furniture and fixtures, but could not find the money. That was paid over by the sheriff to Williams on the same day.

Subsequent to the commencement of the replevin suit, but on the same day, Rutter, Endicott & Whitehouse, and Tyler, Belden & Co. commenced suits against Strong Wadsworth and Mercy Ambler. A writ of attachment was also issued in each suit against Mercy Ambler as a non-resident, and they sought to attach as her property, the money levied on by the sheriff, but could not find it.

On the 6th April, 1863, judgment by confession was entered in favor of Rutter *et al.*, for $3,003.75, upon a cognovit filed by E. G. Asay, as attorney for the defendants, he waiving service of process and consenting to judgment.

On the same day, judgment was in like manner entered in favor of Tyler *et al.* for $1,866.90, and in favor of Marshall & Illsley for $1,600.

On the        April, 1863, Rutter, Endicott & Whitehouse filed their bill of complaint, alleging that the property levied on by Williams belonged to a firm composed of Strong Wadsworth and Mercy Ambler; that the complainants were creditors of the firm and had a right to have the partnership property first applied towards the payment of their debt, before it should be taken to pay the individual debt of Strong Wadsworth.

May 19, 1863, Williams, Hammond and Nelson (sheriff and deputy) put in their answers denying the pretended partnership, and claiming that it was a sham and a fraud.

Replications were filed to these answers.

The parties then proceeded to take their depositions; all of which were taken from May       , 1863, to January 5, 1864.

It appears, from the testimony of complainant's witnesses, that John C. Ambler, son of Mercy Ambler, came to Chicago in 1856, and soon afterwards went into the banking business with E. I. Tinkham, and remained with him until the fall of 1861; that Mercy Ambler resides in Massachusetts, having one daughter (32 years of age) residing with her. Mrs. Ambler

received about $200 per annum from certain real estate in Massachusetts, in which she had a life interest.

During all this time, John C. sent his mother about $400 per year, but kept no account of it. He says he had money in his hands belonging to her; he says that in 1857 he made $500 by a speculation in railroad stocks, which money he says he kept distinct from his own, and considered it her money. It does not appear that he ever informed her of this. He says he never delivered it to her.

In August or September, 1859, $400 belonging to his mother was by her directions sent to him from Canada.

For a number of years he had received from England an annuity of $50 to $75, belonging to his mother.

At or about the time Strong Wadsworth commenced business, at 34 Clark street, John C. Ambler let him have $1,580, and a writing was executed between them, stating that the business to be conducted by Wadsworth, under the name of S. Wadsworth & Co., was to be the business of Mercy Ambler alone, and that Wadsworth was to receive a compensation of ten dollars per week.

When they came to settle in May or June, 1863, they found the profits had been larger than they anticipated, and Wadsworth was allowed one-half of the profits; and they continued afterwards to divide in the same way.

The evidence upon the question as to what authority John C. had to act as the agent of his mother, is found in his deposition.

He swears that the money furnished was his mother's; that part of it was received as the proceeds of a legacy to his mother from her father; that part of it consisted of various sums received by him from England on his mother's account, and part of it a sum of money made by him by a fortunate speculation in 1857, and set apart for his mother while he was entirely solvent.

He also swears that he had general authority from his mother to transact all her business, first given by her in 1848, and repeatedly since that time, under which he managed her business just as he saw fit.

S. C. Smith, who acted as clerk or bookkeeper for the concern, swears that he was appointed by John C. Ambler, in October, 1862, agent of Mercy Ambler, to look after her interests in the concern.

E. I. Tinkham swears that while Ambler was in business with him in 1860, he had about the sum of one thousand dollars which he kept separate and apart from the funds of E. I. Tinkham & Co., and used in the purchase of notes and bills, and which he then stated belonged to his mother.

S. Wadsworth, whose deposition was also taken, says that the money put into the firm belonged to Mercy Ambler, and that she was the partner. The profits were repeatedly divided (a dozen times, Wadsworth states) between the parties, in accordance with the arrangement, during the existence of the concern, from February, 1861, to April, 1863.

The court decreed that the property and effects levied on by Williams' execution were not liable to the levy, for the individual debts of S. Wadsworth, until the partnership debts were first satisfied, holding there was a partnership between S. Wadsworth and Mercy Ambler.

From this decree Williams and the others prayed an appeal to this court, and on the record they have assigned these errors:

1st. The court below erred in finding and decreeing that the money, property and effects levied upon and seized on the execution in favor of said Eli B. Williams, were not liable to said levy and seizure as against the proceedings and process in favor of the said Rutter, Endicott & Whitehouse, Marshall & Illsley and Tyler, Belden & Co., against Strong Wadsworth and Mercy Ambler, until the claim of those parties against said Strong Wadsworth and Mercy Ambler, should be paid and satisfied out of said money, property and effects.

2d. The court below erred in finding and decreeing that the plaintiffs in error had not the right, as against the defendants in error, to retain the said money, property and effects in satisfaction of the said execution in favor of the said Williams.

3d.   The court below erred in decreeing that the said plaintiffs in error should deliver unto Ira Scott, master in chancery, the said money, property and effects.

4th.   The court below erred in decreeing that the plaintiffs in error should pay to the said master the sum of $6,717.67 in default of delivering the identical money levied upon.

5th.   The decree of the court below is not warranted by the proofs.

6th.   The court below should have dismissed the original bill and cross-bill for want of equity.

Mr. PERKINS BASS and Messrs. FARWELL & SMITH, for the appellants.

Mr. F. H. WINSTON and Messrs. SCAMMON, McCAGG & FULLER, for the appellees.

Mr. JUSTICE BREESE delivered the opinion of the Court:

Strong Wadsworth and James Wadsworth, in the year 1857, failed in business in Chicago, having been partners in banking. They were indebted to Williams, the appellant, about eight thousand dollars.   In February, 1861, Strong Wadsworth and one John C. Ambler entered into an arrangement by which the latter furnished to the former the sum of fifteen hundred and eighty dollars, belonging to his mother, Mercy Ambler, residing in Massachusetts, and Wadsworth recommenced the banking business in Chicago, under the name of S. Wadsworth & Co. A written contract was entered into between Ambler, acting as agent for his mother, and Wadsworth, by which Wadsworth was to attend to the business on a salary of ten dollars per week, and to have an interest therein beyond his wages, the profits and losses to accrue to Mercy Ambler.   When, however, they made the first settlement, the profits were found to be larger than had been anticipated, and Ambler allowed to Wadsworth one-half the profits instead of the salary, and the business continued, afterwards, upon the basis of a partnership between Wadsworth and Mrs. Ambler.   The entire capital was fur-

nished by Mrs. Ambler. It appears that John C. Ambler was acting as manager of his mother's affairs, and that she was, to some extent, dependent on him for support, although she had some small means which he invested and controlled for her benefit, and which he sought to keep distinct from his own funds. This arrangement with Wadsworth was made without her knowledge, and she knew nothing of it, until the occurrence of the events which led to this suit. In making the arrangement, John C. Ambler was merely acting under his power as general agent.

In December, 1862, appellant commenced suit against Strong Wadsworth and James Wadsworth, on his old claim against them, and in March, 1863, recovered a judgment against Strong Wadsworth (James not having been served) for over nine thousand dollars. An execution was immediately issued, and levied upon the furniture and money found in the office of S. Wadsworth & Co. The money levied on, amounting to over six thousand dollars, was paid over by the sheriff to appellant, the plaintiff in the execution. Immediately after the levy, judgments were confessed by Strong Wadsworth and Mercy Ambler as follows: One in favor of Rutter *et al.* for three thousand and three $\frac{75}{100}$ dollars, one in favor of Tyler *et al.* for eighteen hundred and sixty-six $\frac{90}{100}$ dollars, and one in favor of Marshall *et al.* for sixteen hundred dollars, and after an ineffectual attempt to recover by writ of replevin the property levied on, Rutter *et al.* filed a bill in behalf of themselves and the other creditors of S. Wadsworth & Co., praying that the property levied on be decreed to be the partnership property of Strong Wadsworth and Mercy Ambler, and, as such, marshaled in payment of their creditors, to the exclusion of the individual creditors of Wadsworth. Appellants Wadsworth, Mercy Ambler and the sheriff were made defendants to this bill. Williams and the sheriff answered, denying the alleged partnership between Wadsworth and Mrs. Ambler, the oath to their answer having been waived. Mrs. Ambler answered, admitting the alleged partnership, and she also filed a cross-bill setting up the partnership, and praying that the

partnership assets might be applied in payment of partnership debts. On the final hearing the court below so decreed, and Williams brings the record to this court. It should be further stated that Strong Wadsworth and Mrs. Ambler are admitted to be insolvent, and that the former had drawn all the profits due to him from the business.

It is apparent, from this statement of the facts, that the decision of this case depends upon the effect to be given to the answer and cross-bill of Mrs. Ambler, by which she ratifies the act of her agent in making the partnership arrangement with Wadsworth. It is denied, however, in the first instance, by the counsel of appellant, that she has legally ratified, there being no proof of authority from her to her attorneys to file the answer or cross-bill, and no proof of her signature to these pleadings which are signed by her in her own proper name.

It is sufficient to say in regard to this, that, in the absence of proof to the contrary, the authority of an attorney of this court to appear and plead for such parties as he claims to represent, is presumed. If the appellants desired to raise this question in the court below, or to impeach the genuineness of Mrs. Ambler's own signature to the answer and cross-bill, they should have filed an affidavit and asked for the proper rule. Not having done this, they cannot now deny the authority of Mrs. Ambler's counsel to file such answer and cross-bill as they thought proper.

The other question is more difficult, but we have arrived at the conclusion, that the ratification of Mrs. Ambler makes the arrangement between her son and Wadsworth good from the beginning. So far as appears, he had no authority to create a partnership between her and another person, but if an agent assumes to do an act of this sort, it may, like any other act of an agent not unlawful, be ratified by the principal, and the ratification relates back to the performance of the act. It is urged, however, that a ratification cannot relate back so as to cut off the intervening rights of third persons. That is doubtless true as a general rule, but if the doctrine of relation is applied merely for the protection of a clearly superior equity,

such application would be consistent with recognized legal principles, even though it interferes with the claims of third persons resting upon an inferior equity. We consider the case before us one of that character. The debt of Williams accrued long before John C. Ambler undertook to create a partnership between his mother and Wadsworth. The credit upon which it accrued did not spring from any control which the latter acquired over the property of Mrs. Ambler. So far as she and her property are concerned, the contracting of the debt had no connection with them. Williams, as a creditor of Wadsworth, was placed in no worse position in consequence of the acts of Mrs. Ambler's agent in forming the partnership, whether such acts were authorized by the principal or not. But how was it with the complainants, the creditors of the firm?

Their debts arose in consequence of money paid by them to S. Wadsworth & Co., for bills of exchange on New York, on the same day with the levy by the sheriff, and the identical money paid by them, was part of that seized under the levy. Mrs. Ambler, by giving to Wadsworth the control of her small capital, through her agent, had enabled him to start the business of S. Wadsworth & Co., and procure credit, by selling drafts to these complainants and the other creditors. Although Mrs. Ambler was under no legal obligation to ratify these proceedings of her agent when they came to her knowledge, yet she was under a certain moral obligation to protect, to the extent of her power, those innocent creditors who had become such, through means furnished by her, and through the acts of her general agent. She recognizes this duty, and by ratifying the act of her agent, has made herself personally liable, as a partner in the firm of S. Wadsworth & Co., for the debts of the firm, and is now liable to be sued therefor. *Wright* v. *Boynton & Hayward*, 37 N. H., 9. These are debts which would have had no existence, but for the acts of her agent in dealing with her property, and connecting her in a partnership arrangement with Wadsworth. If she is now willing to ratify this arrangement, and assume all the liabilities of the firm of S. Wadsworth & Co., *ab initio*, as she does by ratifying,

is it not manifestly just that the other incidents of partnership should follow, and the partnership assets be first applied to the payment of the partnership debts? Is it not plain, that the equity of the creditors of S. Wadsworth & Co., as against the assets of the business done under that name, and as against the capital furnished by Mrs. Ambler, is superior to that of individual creditors of Wadsworth whose debts were contracted long before this business was commenced? If Mrs. Ambler is willing to ratify the acts of her agent, are not their equities, as against Williams, precisely what they would have been if he had had full authority to do what he did? We think so, and it follows that the lien of Williams' execution must be treated, in a court of equity, as only attaching to whatever interest Wadsworth had in the assets of the firm, after the payment of the firm debts.

The decree of the Superior Court must be affirmed.

*Decree affirmed.*