THE STATE EX REL. HAWLEY, Appellant, vs. COUNTY BOARD OF SUPERVISORS OF POLK COUNTY and another, Respondents.

*September 13 — October 2, 1894.*

*Counties: Removal of county seat: Petitions: Addition and withdrawal of names: Variance between names on petition and on poll list: Evidence of identity: Mandamus to county board.*

1. Under sec. 655, S. & B. Ann. Stats., two petitions, having the signatures of different qualified signers, for the submission to the electors of the question of the removal of a county seat, should be considered and acted upon by the county board as one petition, al-

though the second was presented while the first was under consideration.

2. Until proper final action by the county board on such a petition, signers thereof may withdraw their names; and where an alternative writ of *mandamus* has been issued to compel the county board to consider and act upon the petition, the return thereto may show the withdrawal of names, even after service of the writ.

3. Where the signatures to the petition vary from the names on the poll list,— as where initials only are used in one while the full given names appear on the other, or a middle initial used in one does not appear in the other, etc.,— the board should receive evidence, by affidavit or otherwise, to show that the petitioners are the same persons whose names are on the poll lists.

4. *Mandamus* will lie to compel the county board in such a case to receive evidence as to the identity of the petitioners with the electors whose names are on the poll lists, and also to compel the board to consider and act upon a second petition with additional signatures, presented while the first was under consideration.

APPEAL from the Circuit Court for *Polk* County.

This is an appeal from an order overruling a demurrer to the return of the respondents to an alternative writ of *mandamus* issued to compel a meeting of the county board of supervisors of Polk county to consider petitions that had been submitted in respect to the question of removal of the county seat of that county from Osceola to Amery to the qualified voters as required by law, and to receive and count as upon petition in favor of such submission the names appearing on a certain petition referred to in said writ, as well as 147 names on a certain other like petition filed November 21, 1893, and to submit the question of removal of the county seat from said Osceola to Amery in the manner provided by law, or that they show cause, etc. The material question was whether 1,016 names of qualified electors appearing upon the poll lists at the last general election in the county had been signed to said petitions for such purpose.

It was alleged, in substance, in the relation and writ, that a petition signed by 1,410 qualified signers had been pre-

sented, called "Exhibit A" in said writ, in favor of submission, and that by comparison of this petition with the poll lists of the several election districts it appeared that some of the legal voters signed said petition, using their initials, whereas their given names appeared in full upon the poll lists, and some of the signers had added or omitted an initial in signing said petition to their names as appearing upon the poll lists; that a proposition that the chairman of each town be allowed to view the poll lists and petition for the purpose of identifying the names of the petitioners was voted down. The board struck from said petition 136 names on the ground of such differences between them as appeared on said petition and on said poll lists. An exhibit was annexed to said relation and writ, showing such differences; and it is charged that the supervisors refused to take, or allow to be taken, any steps, testimony, or evidence to identify such names as they so appeared as the voters whose names appeared on the poll lists; that 164 other names were stricken from said petition on the ground that they could not be found on the poll lists of the election districts wherein and for which they were signed, and the names of seventeen others as having signed it before and after signing a revocation of said petition; that 129 others signed a revocation, and their names were stricken from said petition, leaving, as it is alleged, 1,100 names of legal signers thereon which should have been counted in favor of submission; that another petition, in form similar to Exhibit A, containing in fact 148 names of voters of said county, none of whom had signed such other petition, was filed for the same purpose with the board before its refusal to submit the question, but it refused to consider such petition, although it contained a demand on the part of the signers that their names should be counted for removal; that all said 148 names were on the poll lists of the several voting districts at the last general election; that

State ex rel. Hawley vs. Board of Sup'rs of Polk County and another.

after reviewing Exhibit A, and before taking action thereon, a number of voters whose names appeared on said petition came before the board and asked to be permitted to make proof of the identity of their names, as they appeared upon the petition, with themselves and with their names as the same appeared upon the respective poll lists, but the board refused to allow any proof of such fact; that the board struck the names of three voters from said petition, although they made affidavit they had never signed any petition or remonstrance against removing the county seat to Amery; and that the board refused to submit the question of removal to a vote of the electors.

The return of the respondents denies that the petition, Exhibit A, contained 1,410 names of legal voters as appeared from the poll lists. It admitted that there were the names of 2,540 legal voters on such lists; that the motion that each chairman should be allowed to view the petition, with a view to determining the names thereon, was lost, and that they determined not to count or consider as a part of said petition the 136 names signed in the manner specified in the relation and writ; and that the board refused and declined to act upon the petition containing 148 names, but denied all knowledge or information sufficient to form a belief as to whether the names thereon were those of legal voters upon the poll lists, and, except as admitted, denied every allegation in the petition. It was further averred that the petition containing 1,410 names was referred to a committee of eight members; that they fairly and deliberately compared the petition with the poll lists of the several voting precincts of the county for the last general election, and made a report showing the result of such investigation, in substance, that there were eighty-five names where there is a difference in initials, in spelling, or where there is an extra initial; that there were fifty-one names where there was a difference of an initial

State ex rel. Hawley vs. Board of Sup'rs of Polk County and another.

for a name, or of a name for an initial; that there were 1,093 names that compared with the poll lists; that there were 164 names not found on the poll lists of the towns where they appeared to have been signed; that there were seventeen names signed twice,— that is to say, before and after signing a revocation; that the total number of names on revocations was 222, of which 125 were of names counted on the petition, and ninety-three not so counted; that the report was acted upon with care and deliberation, after the members of the board had had an opportunity to *consider and understand said petition, report, and findings, and they thereupon determined* that the petition did not contain the requisite number of names of voters to authorize a submission of the question of removal, and passed the following resolution: "Resolved by the county board of the county of Polk that, whereas the statement of the committee on county seat shows 1,093 names on the petition, and the request and demand that 129 of those be taken off and deducted from the 1,093, leaving 964 on the petition, and that the required number of names necessary to be on said petition is 1,016, that the submission to the people to vote on the question be denied."

The return alleged that in refusing to count and consider as a part of the petition the 136 names set out in Exhibit A, in respect to which they appeared differently on the petition than on the poll lists, the board did not act arbitrarily or in violation of the rights of the petitioners, but solely by the fact that said names so set out *did not appear* upon any poll list in the said county at the last general election, and so could not be legally counted; that the 164 other names stricken off were found not to be upon any of the poll lists of the last general election. It is further alleged that the petition containing 148 names was first presented after the former petition had been taken under advisement and referred to a committee, and the board, believing they had

State ex rel. Hawley vs. Board of Sup'rs of Polk County and another.

no right or authority in law to receive and consider it in connection with the petition first filed, refused to do so; that, in denying the motion made to allow members of the board to examine the petition A, the board did not intend to, and in fact did not, prevent any member from inspecting and examining the petition at any and all times, but such action of the board had reference *solely to the manner and the evidence by which it should determine the legality and the sufficiency of said petition;* that there were sixteen other revocations of names on said petition overlooked, and not counted or included in the report of the committee, so that the whole number of names which were properly thereon was 948, instead of 964, as reported; that at the meeting of the board under the writ in April, and prior to the return, there had been filed with the board a remonstrance or revocation paper containing sixty-four names of persons on said original petition, which were found and determined by the board to be legal voters whose names appeared upon the poll lists and constituted a part of the 964 names before mentioned, and the board struck from said petition the said sixty-four names accordingly, whereby the board found and determined the number of names remaining on said petition of legal voters, etc., to be 884; that, as to the second petition, fifty of the names thereon did not appear upon any of the poll lists of the last general election, nineteen of them appearing thereon were signed to said petition twice, making sixty-nine names not entitled to be counted, and that, of the seventy-nine names remaining prior to the making of the return, thirty-nine of the persons named signed a revocation asking that their names be stricken therefrom, leaving but forty names of legal signers thereon.

The respondents attached to their return a certified copy of the proceedings of the board at the annual meeting in November, and at the meeting held under the writ in April, from which it appears that in respect to the 136 names on

the first petition, signed as already stated, various affidavits were presented, showing that ninety thereof were names of legal voters of the towns named therein, and that they actually voted in their respective towns at the last general election, and were the identical persons whose names appear on the poll lists thereof and written as appeared opposite each of their names as on the petition. The variations in the names were specifically shown, and were of the general character already stated. A committee to whom the matters aforesaid were referred at this meeting reported in regard to these names, that there should be a deduction therefrom, for various reasons, of twenty-six, leaving 108 thus circumstanced, and a motion to proceed to take evidence of the several chairmen as to said 108 names was lost in committee. Upon the question of the number of names of signers properly on said petitions there was a majority and a minority report, but that of the majority was adopted, the report of the minority being to the effect that said petitions contained the names of 1,117 lawful signers; but it satisfactorily appears that the majority of the committee, as well as of the board in adopting their report, refused to consider evidence of the identity of the persons signing said petition with the persons named on the poll lists, where there had been a different method of writing them in the respects already mentioned.

For the appellant there was a brief by *S. J. Bradford* and *Clapp & Macartney*, and oral argument by *M. E. Clapp*. They argued, among other things, that the board should have taken evidence as to the identity of the names. The law does not require that the names shall appear on the petition just as they appear on the poll list. The fact to be determined from the poll list is whether the petitioners constitute two fifths of the legal voters, counting as legal voters simply the number on the poll list. The secondary fact that the name of any petitioner is on the poll

list may appear by a comparison, or may rest on a presumption, or it may be established by any competent evidence. *Crews v. Coffman*, 36 Neb. 824; *McKinney v. Board of Comm'rs*, 4 So. Rep. 855. The act of investigating — taking evidence — is ministerial. The act of determining from the evidence, where it involves the exercise of any judgment, is judicial. That the board can be compelled to perform a ministerial duty is elementary. *Ex parte Parker*, 120 U. S. 737; *State ex rel. Hadfield v. Grace*, 83 Wis. 295.

*H. P. Burdick*, for the respondents, contended, *inter alia*, that the statute does not contemplate the taking of proof as to the sufficiency of the petition, except as provided therein. The proceedings under this statute are special in their character, and the supervisors can exercise no powers other than those conferred thereby. While the power exercised is judicial in its character, it is exercised upon proof expressly prescribed. *Loomis v. Bailey*, 45 Iowa, 400; *Herrick v. Carpenter*, 54 id. 340; *La Londe v. Supervisors of Barron Co.* 80 Wis. 380. Where the board is called upon to determine a question of fact, their duty is judicial, and they cannot be compelled by *mandamus* to alter their determination. 14 Am. & Eng. Ency. of Law, 98, 99, 100, 147; *State ex rel. Comstock v. Joint School Dist.* 65 Wis. 631; *Herrick v. Carpenter*, 54 Iowa, 340; *Baker v. Board of Supervisors*, 40 id. 226; *Bennett v. Hetherington*, 41 id. 142; *Johnson v. Eureka Co.* 12 Nev. 28. The question in this case is not the identity of individuals, but the identity of the names only. The board can have no notice or information outside of the petition and poll list as to the identity of the names thereon, and where the names are not identical they should not be received and counted on the petition. *Comm. v. Hall*, 3 Pick. 262; *Comm. v. Shearman*, 11 Cush. 546; *Terry v. Sisson*, 125 Mass. 560; *Comm. v. McAvoy*, 16 Gray, 235; *Parker v. Parker*, 146 Mass. 320; *Davis v. Steeps*, 87 Wis. 472.

State ex rel. Hawley vs. Board of Sup'rs of Polk County and another.

PINNEY, J. 1. The county board of supervisors, in receiving and acting upon the petition for submission to a vote of the electors of the county of the question of the removal of the county seat, under sec. 655, S. & B. Ann. Stats., exercise powers of an administrative character, but do not act in any proper sense in a judicial capacity, although, as in the case of many other public bodies and officers, it becomes necessary for them to pass upon and determine questions of fact in exercising their legitimate functions. They do not proceed after the manner of judicial tribunals, or use any set form or process in exercising their powers, but proceed very much after the method of legislative bodies. It would, we think, savor too much of unnecessary formality and technical refinement to hold that two petitions having the signatures of different qualified signers for the submission of the question of the removal of the county seat could not be considered and acted upon as one petition. We think, therefore, that the second petition, though presented while the first was under consideration, should have been considered, and both acted upon together. The return concedes that forty of the signatures on the second petition were those of qualified signers.

2. It was held in *La Londe v. Supervisors*, 80 Wis. 380, that, before final action by the board, electors who had signed such a petition might lawfully withdraw their names. It is plain that the withdrawal from the first petition of the names, made at the November session, and from the second petition, made at or before the April meeting of the board held to frame and adopt a return to the alternative writ, were properly made; and we are also quite clear that the withdrawal of the sixty-four names from the first petition at the April meeting was in due season and effective. The alternative writ goes upon the ground that the matter of the petition had not been regularly and finally determined, and the object of the writ is to secure proper final action

State ex rel. Hawley vs. Board of Sup'rs of Polk County and another.

thereon.   The signatures of two fifths of the electors who voted at the last general election were essential to the jurisdiction of the board, and the proceeding, until proper final action is had, must be regarded as *in fieri;* and therefore it is competent to show by the return, or by an amended or supplemental return, any valid reason why the alternative writ should not be obeyed, though it was discovered or arose after the writ was served.   The return concedes that there were on the first petition the names of 964 qualified signers, and alleges that sixteen withdrawals made at the November meeting had been overlooked.   So, deducting these and the sixty-four withdrawals at the April meeting, it would leave 884 names properly on the first petition, to which are to be added the forty names of qualified signers on the second, making 924 names properly on the petitions.   It required the signatures of 1,016 qualified signers to justify the submission of the question of removal to a vote of the electors.

3. The committee, at the April meeting, and the board as well in adopting its report, determined that certain deductions should be made from the 136 names on the first petition, the signatures of which in certain respects varied from the names on the poll lists, thus leaving only 108 names, and refused to take evidence as to the identity of these persons with the persons whose names appeared on the poll lists.   It was clearly averred that these persons were competent signers, and the general denial of all allegations not admitted does not countervail the effect of this conceded action of the board.   The question is thus presented whether the board should have received evidence, by affidavit or otherwise, to explain whatever was ambiguous or uncertain in respect to these signatures when compared with the poll lists, as to show that N. Jensen, Byron De Golier, W. E. Paulson, etc., who thus signed the petition, were the same persons named on the poll lists as Nels

Jensen, Byron A. De Golier, and W. A. Paulson, and the like. While it may be conceded that the board had no power to compel the attendance of witnesses and to require them to submit to examination and cross-examination under oath as in a court of justice, yet when the nature of the proceeding, the powers of the board, and the practical necessities of the case are considered, we think it clear that the proof and method of proof tendered were competent, and that in refusing to receive it and rejecting these names the board acted arbitrarily and illegally, and that for the purpose of this appeal it is proper to assume that if evidence had been received it would have appeared that these 108 signers were competent and legally qualified, and if those names are added to the 924 above set forth the whole number would be 1032,— a greater number than was necessary to authorize the submission in question.

The proceeding in question is not in its nature final. It decides only that an election shall be held on the question of removal, and errors in signing the petition, and consequent ambiguities and uncertainties, will necessarily arise, as the names on the poll list are taken down by the clerks hastily, and oftentimes in the briefest or very inaccurate manner. These uncertainties and ambiguities must be settled by the board in the same way that they settle any other question of fact coming before them in the discharge of their duties; otherwise, the many errors in names which occur on poll lists in hastily conducting elections will, in a very great degree, render the execution of the law in question impracticable. Strictly legal evidence, such only as a court would receive, cannot, from the nature of the case, be obtained. That evidence to resolve such ambiguities or uncertainties would be competent in a similar case in a court of justice cannot be, and is not, denied. The admissibility of the evidence tendered for the purpose stated cannot, we think, be doubted. *Ayres v. Moan*, 34 Neb. 210; *Crews v.*

State ex rel. Hawley vs. Board of Sup'rs of Polk County and another.

*Coffman*, 36 Neb. 824. Good faith on the part of the board required it to act fairly and impartially in the matter, and to give a reasonable opportunity to parties interested to produce such proof as they might be able, and, when produced, to weigh it in like manner. No doubt the decision of the board, regularly and fairly made, as to the facts proved, would be conclusive; but here the board illegally refused to consider any facts *dehors* the petition and poll lists, and denied the right, essential to a fair hearing, of producing evidence. A decision thus arrived at cannot be held conclusive without violating every principle upon which a fair and impartial determination depends. The case of *La Londe v. Supervisors*, 80 Wis. 380, affords no support to such a method of procedure, and does not decide that extrinsic evidence may not be received to remove such ambiguities or uncertainties. Such evidence is clearly necessary to enable the board to determine whether "the names of the voters on the poll lists have been signed to the petition."

The return shows upon its face that the respondents have not fairly pursued their authority, and have not executed the discretion confided to them in a lawful manner. It is the proper function and use of the writ of *mandamus* to keep subordinate and inferior bodies and tribunals within their jurisdiction, and to compel them to exercise the discretionary powers vested in them according to law. The principle which governs such cases is that the writ lies to compel the performance of specific duties imposed by law upon public officers or bodies, in the absence of other adequate remedy. It will not lie in any matter requiring the exercise of official judgment or resting in the sound discretion of the officer or body to whom a duty is confided by law, either to control the exercise of that discretion or to determine the decision which shall be finally given, but only to set the party in motion and compel him to fully

exercise his functions when he has refused or neglected to exercise them at all. 2 Spell. Extr. Relief, §§ 1432, 1433. And it lies to correct arbitrary and illegal action. Merrill, Mand. §§ 39, 40; *Rex v. Justices of West Riding*, 5 Barn. & Adol. 667. The function of the return is not simply to show what would amount to *prima facie* right in the respondent, in the absence of any allegation to the contrary, but to show a right to refuse obedience in view of the allegations it contains, and if it does not do this it is demurrable. *State ex rel. Cothren v. Lean*, 9 Wis. 279. The return in this case avows and does not justify the refusal of the board to receive and act on evidence as to the 108 names mentioned, or the refusal to act upon the second petition, and to this extent it appears that the relator is entitled to relief. The order of the circuit court overruling the demurrer should be reversed.

*By the Court.*— The order of the circuit court is reversed, and the cause is remanded with directions to sustain the demurrer.

