H. CLAY MERRITT *et al.*

*v.*

THE CITY OF KEWANEE.

*Opinion filed October 24, 1898.*

1. PUBLIC IMPROVEMENTS—*requirements of section 4 of Local Improvement act of 1897 are imperative.*  Under section 4 of the Local Improvement act of 1897 (Laws of 1897, p. 103,) it is imperative that the owners of a majority of the abutting property shall petition the board for the improvement.

2. SAME—*Local Improvement act contemplates a written petition.*  Section 4 of the Local Improvement act of 1897, providing that the owners of a majority of the abutting property "shall petition" for the improvement, contemplates a written petition signed by them.

3. SAME—*term "owners" of property means owners of the fee.*  The term "owners," used in the Local Improvement act of 1897, with reference to parties who are required to sign the petition for an improvement, means owners of the fee of the abutting property.

4. SAME—*signature of a tenant in common represents only his individual part of lot.*  The signature to a street improvement petition of one tenant in common of a lot abutting on such street represents only his individual part of such lot, in the absence of any authority from his co-tenants to sign for them.

5. SAME—*signature of husband as owner of wife's lot cannot be included in estimate.*  The signature to a street improvement petition which represents the signer as the owner of abutting property in fact owned by his wife cannot be included in estimating the amount of property representation; nor can the wife, after the ordinance has been passed, ratify such signature so as to cure the defect.

6. SAME—*ordinance based on insufficient petition is void.*  An ordinance based on a petition by abutting owners, as required by the Local Improvement act of 1897, is void if the unauthorized signatures of parties as owners of abutting property must necessarily be included to obtain a majority of property representation.

7. SAME—*unauthorized signing as owner is a "substantial" variance.*
The act of one who signs a street improvement petition as owner
of a lot in fact owned by another, is such a substantial variance
between the requirements of the law and the actual mode of sign-
ing the petition as is contemplated by section 9 of the Local Im-
provement act of 1897, as may be shown to overcome the *prima facie*
case made by the petition, recommendation of the board of improve-
ment and the ordinance based thereon.

APPEAL from the County Court of Henry county; the
Hon. A. R. MOCK, Judge, presiding.

This is .a proceeding in the county court of Henry
county, begun by a petition filed on August 23, 1897, by
the city of Kewanee for the confirmation of a special tax
on contiguous property for the purpose of paving a part
of a street, known as Tremont street in that city.    The
proceeding was instituted under the act of the State of
Illinois, approved June 14, 1897, in force July 1, 1897, en-
titled "An act concerning local improvements." (Laws of
Ill. 1897, p. 101). Attached to the petition is an ordinance
numbered 10 of said city, providing for such pavement,
and that the cost thereof shall be raised by the levy of a
special tax on contiguous property.    The ordinance was
adopted on August 17, 1897. The petition sets forth that,
prior to the passage of the said ordinance, a petition was
filed with the board of local improvements of said city,
which was signed by the owners of more than one-half of
the property proposed to be improved, and which prayed
that said street should be paved with vitrified brick. The
petition also alleges, that, on August 7, 1897, the board
of local improvements passed a resolution, setting forth
the filing of said petition last named, a description of the
improvement, and estimate of the cost of the same, and
the manner in which such cost should be provided for;
that, on August 7, 1897, notices were posted, calling a
meeting on August 17, 1897, of persons interested; that a
meeting was held on said last named date; that said reso-
lution was amended by submitting a corrected estimate

of the cost and providing that funds therefor, excepting the costs of street and alley intersections, should be raised by special taxation of contiguous property, instead of assessment as theretofore proposed; that the board of local improvements prepared a draft of an ordinance for said improvement, and submitted the same, together with the estimated cost, etc., to the city council; that the ordinance so submitted is ordinance No. 10 above referred to; that the president of said board appointed Theron H. Chesley as a suitable person to apportion said special tax between said city and the owners of the property, and to apportion the same among the lots, blocks, etc., liable to the assessment for the improvement. The petition prays for an order, directing said Chesley to make a true and impartial assessment upon the city and upon the property benefited by such improvement, and that he apportion the same among the lots, blocks, etc., contiguous thereto; and that he give notice of the filing of the assessment roll prepared by him.

On August 24, 1897, an order of court was entered granting the prayer of the petition; and an affidavit of the said Theron H. Chesley was made as to the assessment made by him under said order, which affidavit is attached to and made a part of the assessment roll. An order was made by the county court on August 25, 1897, that the assessment roll be set for hearing on September 10, 1897, and that notice thereof be published. Objections were filed September 10, 1897, by H. Clay Merritt, appellant, and others. The hearing was continued to October 13, 1897, and an order was made that objectors amend their objections on or before October 13. The court overruled the objections except as hereinafter stated, to which order overruling their objections appellants excepted. The court entered an order confirming the special tax, except as to the points to be passed upon by the jury. The hearing was continued until January 3, 1898, when final decree was entered, holding the assessment of the special tax

to have been legally made. The objections not overruled were to the effect that the property of the objectors would not be benefited to the amount of the assessment, and that such property was assessed more than its proportionate share of the cost of the improvement. These latter objections were set for hearing December 6, 1897, and the hearing thereof was continued to December 8, 1897, whereupon the objections not theretofore overruled, and which should be heard by a jury, were waived, and objectors were defaulted as to such objections. In the final decree, entered on January 3, 1898, the court found that said ordinance numbered 10 was legal and valid, and confirmed the assessment in every particular. The present appeal is prosecuted from such judgment of confirmation.

C. C. WILSON, and J. R. MOORE, for appellants.

WILLIAM LAWSON, City Attorney, (CHARLES K. LADD, of counsel,) for appellee.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

The present proceeding is brought under the act of June 14, 1897, "concerning local improvements." That act makes material changes in the mode of making local improvements by special taxation and special assessment. The act provides for the creation of a board of local improvements which, in cities having a population of 25,000 or more, is made to consist of five members, and, in cities having a population of less than 25,000 and in villages and incorporated towns, is made to consist of three members. The city of Kewanee has a population of less than 25,000 inhabitants. The board of local improvements in cities, having a population of less than 25,000, consists of the mayor of the city, and a superintendent of streets and a public engineer to be appointed as provided in the act, or two members of the city council, in case the last two named officials have not been provided for by ordinance.

Section 4 provides that, when any city shall by ordinance provide for the making of any local improvement, it shall therein prescribe whether the same shall be made by special assessment, or by special taxation of contiguous property, or general taxation, or both.   Section 7 provides, that all ordinances for local improvements to be paid for wholly or in part by special assessment or special taxation shall originate with the board of local improvements; that petitions for any such public improvement shall be addressed to said board; that the board shall adopt a resolution describing the proposed improvement, which resolution shall be at once transcribed into the records of the board; that the board shall by the same resolution fix a day and hour for the public consideration thereof, which shall not be less than ten days after the adoption of the same; that the board shall also cause an estimate of the cost of such improvement to be made in writing by the public engineer, if there be one, if not then by the president, over his signature, which shall be itemized to the satisfaction of the board and made a part of the record of such resolution; that notice of the time and place of such hearing shall be given in the manner stated in said section 7; and that if, upon such hearing, the board shall deem such improvement desirable, they shall adopt a resolution therefor, and prepare and submit an ordinance therefor as in said act provided.

Section 8 provides that, at the time fixed for such hearing, the board shall meet, and hear the representations of any person desiring to be heard on the subject of the necessity for the proposed improvement, the nature thereof, or the cost as estimated; that, after such hearing, in case of objection, the board shall adopt a new resolution, abandoning the proposed scheme, or modifying the same, or adhering thereto; that, if the proposed improvement is not abandoned, the board shall cause an ordinance to be prepared therefor to be submitted to the city council; and that such ordinance shall prescribe the nature, character,

locality and description of such improvement, and shall provide whether the same shall be made wholly or in part by special assessment, or special taxation of contiguous property; and if in part only, shall so state.

Section 9 provides that with any such ordinance, presented by such board to the city council, there shall also be presented a recommendation of such improvement by the said board, signed by at least a majority of the members thereof.

Section 10 provides that, together with the ordinance and recommendation, there shall be presented to the city council an estimate of the cost of such improvement itemized so far as the board shall think necessary, over the signature of the engineer of the board, if there be one, and by the president if there be no engineer, who shall certify that, in his opinion, the estimate does not exceed the probable cost of the improvement proposed, and the lawful expenses attending the same.

Section 4 also provides that "in cities, towns or villages having a population of less than 25,000, ascertained as aforesaid, no ordinance for making any local improvement shall be adopted, unless the owners of a majority of the property in any one or more contiguous blocks abutting on any street, alley, park or public place shall petition for such local improvement." Section 5 provides that: "No ordinance for any local improvements, to be paid wholly or in part by special assessment or special taxation, shall be considered or passed by the city council or board of trustees of any such city, village or town, unless the same shall first be recommended by the board of local improvements provided for by this act." Section 34 provides that: "Whenever the owners of a majority of the property in any one or more contiguous blocks abutting on any street, alley, park, or public place, shall petition for any local improvement thereon, the board of local improvements, in any city, village or town, shall take the steps hereinbefore required for a hearing thereon, but at

such hearing shall consider only the nature of the proposed improvement, and the cost thereof, and shall determine, in the manner above provided, the nature of the improvement which they will recommend, and shall thereupon prepare and transmit to the legislative body a draft of an ordinance therefor, together with an estimate of the cost, as above described, and shall recommend the passage thereof, which recommendation shall be *prima facie* evidence that all the preliminary steps required by law have been taken; and thereupon it shall be the duty of such legislative body to pass an ordinance for the said improvement, and take the necessary steps to have the same carried into effect." Section 9 also provides that: "The recommendation by said board, shall be *prima facie* evidence that all the preliminary requirements of the law have been complied with; and if a variance be shown on the proceedings in the court, it shall not affect the validity of the proceeding, unless the court shall deem the same willful or substantial."

One of the objections, made by appellants in the court below, was that the ordinance No. 10 was invalid upon the alleged ground that the owners of a majority of the contiguous property did not petition for said improvement, and that no petition signed by the owners of a majority of said property was ever presented to the board of local improvements before the passage of said ordinance; and that no local ordinance was passed or adopted by the city council of the city of Kewanee authorizing said assessment.

The petition, addressed to the board of local improvements, in this case which was offered in evidence, contained the names of fifty-two persons who claimed to be owners of contiguous property, representing 4196 feet and a fraction. Counsel for the appellants say in their brief: "The petition in this case asking for the improvement purports to embrace the lots on both sides of the street to be improved, measuring 7571.6 feet, a majority

being 3785.9 feet." Counsel for the appellee say in their brief: "The total frontage of the private property upon this improvement is 7473.2 feet, requiring a petition signed by the owners of 3736.6 feet of frontage to authorize this improvement." The difference between counsel as to the total frontage, and as to the number of feet which constitute a majority of the frontage, seems to arise out of the fact, that counsel for appellants include in their estimate certain property, abutting upon the street to be paved, which belongs to the city, while counsel for appellee exclude such abutting property so belonging to the city. We do not deem it necessary to decide the question, whether it was proper or not to include in the estimate this city property. It may be conceded for the purposes of this decision, that the appellee is correct in fixing the total frontage at 7473.2 feet, and fixing a majority of the frontage at 3736.6 feet. As the persons signing the petition represented 4196 feet, the petition to the board of local improvements was signed by more than a majority, if all the signatures were the signatures of the owners of the property in any one or more contiguous blocks abutting upon the street to be paved.

The evidence, however, shows that the petition to the board of local improvements was signed by certain persons, who were not owners of any property abutting upon the proposed improvement. Lots abutting thereon were owned by married women, and the petition was signed by the husbands of these women in their own names as owners, and not as agents of their wives. It also appears, that certain lots abutting upon the improvement were owned by several tenants in common, and that the petition was not signed by all of the tenants in common owning such lots. For instance, one person who owned an undivided one-third of a lot signed the petition as the owner of the whole of it; in another case, one person, who owned an undivided one-eighth part of a lot, signed the petition as the owner of the whole of it. After de-

ducting from the number of feet purporting to be signed for by owners of the abutting property, to-wit, 4196 feet, those lots and parts of lots which were owned by married women and by tenants in common, where the husbands of the married women signed as owners, and where one tenant in common signed for the other tenants in common owning a particular lot, the petition was not signed by the owners of a majority of the abutting property.

Section 4 of the act of 1897 states that, in cities having a population of less than 25,000, "no ordinance for making any local improvement shall be adopted, unless the owners of a majority of the property in any one or more contiguous blocks abutting on any street, alley, park or public place shall petition for such local improvement." The requirement of the statute is thus imperative, that the owners of a majority of the abutting property shall petition for the improvement. As the evidence shows that the petition in this case was not signed by the owners of a majority of the abutting property, after excluding the signatures so made by married men and so made by tenants in common, then the ordinance, prepared by the board of local improvements and submitted to the city council, and which lies at the basis of this assessment proceeding, was invalid. (*Thorn* v. *West Chicago Park Comrs.* 130 Ill. 594).

Counsel for appellee say, that the statute does not require that any petition shall be signed. The words of the statute are, "unless the owners * * * shall petition for such local improvement." It seems to be claimed, that the local improvement can be petitioned for without the presentation of a petition in writing. We think, however, that the statute contemplates a written petition, as may be seen by reference to the language used in section 7, where it is said: "Petitions for any such public improvements shall be addressed to said board." It is not customary to speak of an oral petition to a public body as being a petition addressed to such body. In *Miller* v.

*City of Amsterdam,* 149 N. Y. 288, the charter of the city of Amsterdam provided, that no street should "be paved by said city unless the owners, owning a majority of the amount of lineal feet fronting on the part of the street proposed to be paved, petition therefor; and the same shall be ordered by a vote of two-thirds of the common council." It will be observed that, in the statute referred to in the *Miller case,* the same words are used as in the Illinois act of 1897, to-wit, "petition therefor;" and yet it was held in that case that, upon a petition purporting to be signed by the owners of a majority of the lineal feet fronting on that part of the street to be paved, an assessment levied for paving, ordered on a petition which, though believed to represent such owners, did not in fact do so, was void for want of jurisdiction; in that case, the referee found that the owners of the required frontage upon the street "did not sign the petition;" and the court held that the common council did not acquire jurisdiction to lay the pavement.

Counsel for appellants claim, that the evidence in this case failed to show that the married women, whose husbands signed the petition, had given their husbands any written authority to do so, and also failed to show that the tenants in common not signing had given any written authority to their co-tenants who did sign, and that, therefore, the signatures were invalid. This contention is based upon the assumption that, if the signatures thus made were made by the agents of the parties not signing, their authority to do so should have been in writing, upon the alleged ground that the assessment was a charge upon the real estate, and, as such, involved such an interest in land as, under the Statute of Frauds, required the authority of the agents to be in writing. We do not deem it necessary to pass upon the question, whether there was here any such interest in land as operated to make the signatures void because of the absence of written authority to the supposed agents.

It may be conceded, for the purposes of this case, that oral authority was sufficient to authorize the signatures of the owners of the lots to the petition to the board of local improvements. So far as the tenants in common are concerned, there is no claim that they had any authority, either oral or written, to sign the names of the other tenants in common of each lot which they represented. Neither is it claimed that there was any ratification by the tenants in common not signing of the acts of those who did sign. It must, therefore, of necessity be true, that the signature of one tenant in common of a lot was not the signature of the owners of the other undivided interests in the lot. It follows, that each tenant in common, who signed the petition, only signed for the individual part of the lot which he owned, and not for the undivided portions thereof which he did not own.

The husbands, who here signed their names, did not sign the names of their wives by themselves as agents, but signed their own names as owners. The petition begins, "We, the undersigned, owners of property abutting," etc. The evidence does not show, that the husbands so signing had any previous oral authority to sign the names of their wives to the petition. It is claimed, however, that their acts in so signing the petition were ratified by their wives subsequently. Certain ratification papers were introduced in evidence, executed by a number of these married women in October, 1897, long after the ordinance for the improvement was passed, and long after the petition, upon which this proceeding is based, was filed in the county court. These ratification papers purported to be acknowledged before notaries public. Their admission was objected to by the appellants, and the objections were overruled. We know of no statute which makes the acknowledgment of such an instrument proof of its execution. The married women signing these ratification papers were not placed upon the stand so as to give the objectors an opportunity to cross-examine them,

but the papers themselves were introduced with no other proof than that of the signatures thereto. Whether this was a proper mode of proving ratification or not, we are of the opinion that such papers did not have the effect of ratifying the acts of the husbands of these married women in signing the petition to the board of local improvements so as to give force and effect to the proceedings of the corporate authorities which were based upon said petition. It is laid down in many of the books, that "a ratification is only effectual, where the act is done by a person professedly acting as agent of the party sought to be charged as principal." (1 Am. & Eng. Ency. of Law, p. 431). Mechem, in his work on Agency (sec. 127), says: "The act ratified must also have been done by the assumed agent as agent in behalf of the principal. If the act was done by him as principal and on his own account, it cannot thus be ratified." There are some cases, which hold that it is not indispensable in order to bind the principal, that the contract shall be executed in the name, and as the act of the principal. But, as a general thing, it will be found that, in the latter class of cases, the language of the instrument is such, that it can be gathered therefrom that the party describes himself and acts as agent, and intends thereby to bind the principal, and not to bind himself. (*Stackpole* v. *Arnold*, 11 Mass. 27; Story on Agency, —8th ed.—secs. 147, 160*a; Townsend* v. *Corning*, 23 Wend. 435; *Townsend* v. *Hubbard*, 4 Hill, 351; *Hypes* v. *Griffin*, 89 Ill. 134; *Mears* v. *Morrison*, Breese, 223; *Powers* v. *Briggs*, 79 Ill. 493; *Ohio and Mississippi Railroad Co.* v. *Middleton*, 20 id. 629; *Salem Nat. Bank* v. *White*, 159 id. 136).

In the case at bar, there is nothing upon the face of the petition signed, nor in any of its terms or language, to indicate that the parties signing represented any other person or persons than themselves.

Independently, however, of the question whether or not the ratification in this case was ineffectual by reason of the manner in which the petition was signed, the

ratification cannot have the effect, which is sought to be given to it, for another and more substantial reason. It is true, as a general rule, that, if an agent assumes to do an act which he has no authority from his principal to perform, such act, if not unlawful, may be ratified by the principal, and the ratification relates back to the performance of the act. It has been said, that "in ordinary cases the ratification extends back to the beginning, and operates upon all that has since been done." (Mechem on Agency, sec. 168). But this rule is subject to an exception. A ratification cannot relate back so as to cut off the intervening rights of third persons. (*Williams* v. *Butler*, 35 Ill. 544). "If, prior to the ratification, the principal has put it out of his power to perform the contract ratified by conveying the subject matter thereof to a third person, who took the same in good faith, or, if third persons have in good faith acquired an estate or interest in, or a lien or claim upon the subject matter by attachment, judgment or otherwise, these rights cannot be cut off at the mere volition of the principal. Nor will the principal, by ratifying, be permitted to impose substantial duties or obligations upon third persons which would not exist, if the ratification had not taken place." (Mechem on Agency, sec. 168; *Cook* v. *Tullis*, 18 Wall. 332; *McCracken* v. *City of San Francisco*, 16 Cal. 624; *Taylor* v. *Robinson*, 14 id. 396; *Wood* v. *McCain*, 7 Ala. 800; *Pollock* v. *Cohen*, 32 Ohio St. 514). In other words, a ratification can only be made when the principal possesses at the time of the ratification the power to do the act ratified. The party ratifying should not merely be able to do the act ratified at the time when the act was done, but also at the time when the ratification is made. (*McCracken* v. *City of San Francisco*, *supra*; *Cook* v. *Tullis*, *supra*). The ratification is the first proceeding by which the principal becomes a party to the transaction. (*Cook* v. *Tullis*, *supra*).

It is said that ratification by the wives, whose husbands signed the petition as owners in this case, operated

upon the signing of the petition precisely as though the authority to do so had been previously given. If this were true, it would only be true so far as the wives themselves are concerned. But, acting upon the petition signed by the husbands who were not owners, as a basis, the board of local improvements made a recommendation of the improvement to the common council, and submitted to the common council the draft of an ordinance. This ordinance was passed and adopted by the common council. The petition, as originally signed, was, therefore, the foundation of the ordinance which was adopted on August 17, 1897. The ratification by the married women of the acts of their husbands in signing the petition could not have the effect to validate an ordinance based upon that petition. The statute expressly requires, that a petition by the owners shall precede the passage of the ordinance. "No ordinance * * * shall be adopted, unless the owners of a majority, etc., shall petition for such local improvement." In October, 1897, when the ratification papers above referred to were executed, the ordinance had already been adopted, and the rights of the present appellants, as objectors, to insist upon the invalidity of the ordinance had already accrued. When the ratification took place, the married women so ratifying did not have it in their power to sign their names to a petition for the improvement provided for in the ordinance passed on August 17, 1897. The ordinance, which had been adopted, was "an ordinance for making a local improvement," as shown by the terms of section 4 of the act, and the owners of a majority of the abutting property must "petition for such local improvement;" that is to say, for the local improvement mentioned in the ordinance. In October, 1897, the wives of these signers could not sign a petition for the improvement specified in the ordinance which was actually passed, because the petition, upon which that ordinance was based, was required to precede and did precede the ordinance itself. The ordinance of

August 17, 1897, based upon the insufficient petition, was a consequence flowing from that petition, which could not be embraced within the curative effect of the ratification sought to be made.

By the terms of section 9, the recommendation made by the board of local improvements is made *prima facie* evidence, that all the preliminary requirements of the law have been complied with. Hence, in the present case, when the petition and the recommendation and the ordinance were introduced in evidence, the city made a *prima facie* case, and the burden of proof was upon the objectors to show, if such was the fact, that the petition had not been signed as required by the act. Section 9 says that, "if a variance be shown on the proceedings in the court, it shall not affect the validity of the proceeding unless the court shall deem the same willful or substantial." It is difficult to understand just what is meant here by the word, "willful." It seems impossible to believe, that the men, who signed their own names as owners to this petition, did not know that they themselves were not the owners, but that their wives were the owners of the property for which they signed. Their acts in so signing would seem to have been, in a certain sense, willful, if not fraudulent. But, whether this is so or not, we think the proof here made shows that there was a "substantial" variance between the requirements of the law and the mode of signing the petition. Where the law requires that owners shall sign the petition, and parties who are not owners sign the petition, there certainly is a substantial variance between the law and the act done. It sufficiently appears from the testimony of these signers themselves, that their wives were the owners of the property; and, while some of the proof introduced to establish ownership may not have been competent for that purpose, there was other proof that was competent. The word, "owner," as here used in the statute, means owner in fee. (*Illinois Mutual Ins. Co.* v. *Marseilles Manf. Co.* 1 Gilm.

236; *Wright* v. *Bennett*, 3 Scam. 258; *Whiteside* v. *Divers*, 4 id. 336; *Jarrot* v. *Vaughn*, 2 Gilm. 132). Although the ordinance was *prima facie* valid in view of the recommendation made by the board of improvements, yet, when the proof showed that the petition had not been signed by the owners of a majority of the abutting property, the void character of the ordinance was established. It is well said that an act, which is void at the time it is done, can not be ratified. Even the legislature cannot impart life to a void proceeding. (Mechem on Agency, sec. 114; *Day* v. *McAllister*, 15 Gray, 433; 1 Am. & Eng. Ency. of Law, p. 430; *McDaniel* v. *Correll*, 19 Ill. 226; *Miller* v. *City of Amsterdam, supra; Marshall* v. *Silliman*, 61 Ill. 218). Unless a valid ordinance is shown, there is nothing upon which the subsequent assessment proceeding can rest. Such a valid ordinance is the foundation for an improvement by special assessment or special taxation, and cannot be dispensed with. (*City of Carlyle* v. *County of Clinton*, 140 Ill. 512; *Lindsay* v. *City of Chicago*, 115 id. 120; *City of East St. Louis* v. *Albrecht*, 150 id. 510). In proceedings for the collection of taxes or special assessments or special taxes, the requirements of the statute must be strictly followed. (*McChesney* v. *People*, 148 Ill. 221; *City of Alton* v. *Middleton's Heirs*, 158 id. 442).

We are of the opinion, that the county court erred in not sustaining the objection that the petition for the improvement in this case was not signed by the owners of a majority of the property in any one or more contiguous blocks abutting on the street proposed to be paved.

For the error in refusing to sustain the objection the judgment of confirmation entered by the county court is reversed, and the cause is remanded to that court for further proceedings in accordance with the views herein expressed.                *Reversed and remanded.*