The People of the State of New York ex rel. William C. Brownell, Respondent, v. The Board of Assessors of the City of Buffalo, Appellant.

Certificate of Assessors of Buffalo in Street Opening Proceedings. In the absence of fraud or bad faith the certificate of the board of assessors of the city of Buffalo must be regarded as conclusive on the facts, as to matters required to be certified by it relative to street openings under the charter of that city as amended (L. 1891, ch. 105, §§ 398, 399, amd. L. 1900, ch. 707). Errors unintentionally made, or through lack of information, do not afford ground for review of its action. The board is not called upon to determine questions of law arising under the city charter, nor are its members authorized to determine such questions.

*People ex rel. Brownell* v. *Board of Assessors,* 127 App. Div. 851, 948, reversed.

(Argued September 30, 1908; decided October 23, 1908.)

Appeal, by permission, from an order of the Appellate Division of the Supreme Court in the fourth judicial department, entered July 7, 1908, which affirmed an order of Special Term denying a motion to quash a writ of certiorari to review the proceedings of the defendant in certifying that

a petition for the repaving of a certain street was signed by a majority of the resident owners of land fronting thereon.

The facts, so far as material, are stated in the opinion.

*Louis E. Desbecker, Corporation Counsel (Samuel F. Moran* of counsel), for appellant. The certificate of the board of assessors that the application was made by a majority of the owners and that they owned at least two-fifths of the lands fronting on the street is conclusive, and the court has no power to open and re-examine the question. (L. 1891, ch. 105, § 398; *Matter of Kiernan,* 62 N. Y. 457; *Miller* v. *Amsterdam,* 149 N. Y. 288; *Matter of Comrs. of Central Park,* 50 N. Y. 493; *City of Denver* v. *Londoner,* 33 Colo. 104; *Mansfield* v. *City of Lockport,* 24 Misc. Rep. 25.) A statute prescribing that the determination of an inferior tribunal shall be conclusive is a bar as well to a review by a common-law certiorari as by any other proceeding for review and correction of error. (*People ex rel.* v. *Betts,* 55 N. Y. 600; *People ex rel. Miller* v. *Peck,* 73 App. Div. 89; *People ex rel. Graveline* v. *Hahn,* 59 App. Div. 314.) The statute prescribing that the assessors' certificate shall be conclusive is a bar to a review of alleged errors of law and the words " as to the facts" following the word "conclusive" in no way limit or qualify the force and effect of that word. (*Matter of Comrs. of Central Park,* 50 N. Y. 496; *Matter of Canal & Walker Sts.,* 12 N. Y. 406; *Hiles* v. *Fisher,* 144 N. Y. 306.)

*Frank E. Williams* for respondent. The action of an inferior tribunal or quasi judicial board may be reviewed by the Supreme Court by common-law writ of certiorari upon questions of law, even in cases where the statute has declared such action to be final and conclusive. (*Lawton* v. *Comrs. of Cambridge,* 2 Caines, 179; *Leroy* v. *Mayor, etc.,* 20 Johns. 430; *Ex parte Mayor, etc.,* 23 Wend. 287; *Matter of Canal & Walker Sts.,* 12 N. Y. 406; *People ex rel.* v. *Freeman,* 3 Lans. 148; *People ex rel. Seymour* v. *Canal Board,* 7 Lans. 221; *People ex rel. O'Reilly* v. *Common Council,* 53 App.

Div. 68; *People ex rel. Kilmer* v. *McDonald,* 2 Hun, 70; *People ex rel Yonger* v. *Allen,* 52 N. Y. 538; *Matter of Fitch,* 147 N. Y. 334.)

HAIGHT, J.   On or about the 11th day of November, 1907, a petition was presented to the common council of the city of Buffalo by alleged property owners liable to be assessed for improvement of Broadway in the city of Buffalo, from Herman street to Bailey avenue, praying that the same may be paved with German rock asphalt.   The petition appears to have been received by the common council and referred to the board of assessors for the purpose of having that board determine whether the petition was signed by a majority of the resident owners of real estate fronting upon the street, and as to whether the signers were the owners of two-fifths of the land so fronting, and as to whether the lands had been divided for the purpose of affecting such majority.   On the 18th day of November, 1907, the board of assessors returned the petition to the common council with its certificate thereto attached, in which it is certified that the petition was signed by a majority of the resident owners of lands fronting on that part of the street in and along which the improvement was sought to be made, and that such owners represented at least two-fifths of all the land fronting on that part of the street, and that in the judgment of the assessors none of the lands had been divided for the purpose of affecting such majority. Thereupon the common council ordered the street to be repaved in the manner provided for in the petition, and directed the board of assessors to make an assessment of the cost thereof upon the real estate benefited by such improvement.   The relator then presented a petition to the Supreme Court praying for a writ of certiorari directed to the assessors commanding them to certify and return to the court all the proceedings, decisions and actions of the board had and made in the premises to the end that the decision and certificate by the board may be reviewed and corrected upon the merits.   The relator, in his petition, alleged that the certificate of the board

of assessors was incorrect and erroneous and contrary to law for the reason that the petition of the property owners was not signed by a majority of the resident owners on the part of the street in which the improvement was to be made, owning and representing at least two-fifths of all the land fronting on that part of the street; that the assessors had unlawfully and erroneously counted the signatures upon the petition signed by attorneys, agents or executors; that in some instances the signers of the petition had not written opposite their signatures the time when the same was signed, but that other persons had written such time in their stead; that in counting and determining the number of resident owners of the lands fronting on that part of the street in and along which the improvement was to be made, for the purpose of making a certificate the board counted only one such resident owner in all cases where premises fronting on the street were owned by and assessed on the books and maps kept by the board of assessors to two or more persons as owners; that twenty-nine of such resident owners as tenants in common or by the entirety were not counted as such resident owners by said assessors; that the total number of such resident owners was two hundred and ninety-six and a majority thereof was one hundred and forty-nine, and that the total number of signatures counted and allowed by the board of assessors was one hundred and forty-six. Upon the presentation of such petition the writ was allowed which the assessors now move to quash and supersede.

Inasmuch as the motion to quash the writ of certiorari is based upon the petition of the relator the question presented is as to whether its allegations are sufficient in law to authorize the issuing of the writ. The charter of the city of Buffalo (Laws of 1891, ch. 105, §§ 398, 399, as amended by ch. 707 of the Laws of 1900) provides that when the expense of any work or improvement for paving or repairing of a street shall exceed the sum of five hundred dollars it shall not be ordered unless,

"1. Upon the vote of three-fourths of all the members

elected to the common council, and after notice of the intention to order it shall have been published three times a week for two weeks, in the official paper of the city ; or

" 2. Unless it shall be applied for by a majority of the resident owners of the lands fronting on the street or alley, representing at least two-fifths of all the feet front of the lands on the street or alley, in and along which such improvement is to be made; or if such improvement is intended to be made in and along only part of such street or alley, then by a majority of such resident owners of the lands, representing at least two-fifths of all the lands fronting on the part of such street or alley as to which such improvement is to be made."

" The board of assessors shall return the application of the common council, with its certificate thereon as to the facts required, which certificate shall be conclusive as to the facts.    The board of assessors shall also certify whether, in its judgment, any of the lands have been divided for the purpose of affecting such majority."

Chapter 36 of the ordinances of the city of Buffalo provides that, " Sec. 1. All petitions for paving or repaving a street shall be first filed with the city clerk and by him transmitted to the board of aldermen.  Sec. 2.  *  *  *  Every such petition shall be void unless every name upon it shall be the *bona fide* signature of the person indicated by such name, who at the time of the signing shall have written opposite his signature the day of the month and year when such signature was written; nor shall any such petition be valid unless every signature appearing thereon shall have been written with ink or with indelible pencil, and shall bear date within six months prior to the date of presentation of said petition to the city clerk.    Every petition which does not comply in all respects with the conditions prescribed by this section shall be rejected."

It must be conceded that, under the allegations of the petition, there was an error in the determination of the board of assessors as to the number of resident owners, that only one hundred and forty-six had signed the petition, and it required one hundred and forty-nine to constitute a majority.    In other

words, the petition lacked three of having a majority of the resident · owners. It will be observed, however, that the relator has failed to allege that there was any intentional omission in the counting of the names of tenants in common, or joint tenants, nor is there any allegation in the petition that the persons signing the names of owners as attorneys, agents or executors were not in fact such attorneys, agents or executors authorized to sign the names of such owners, or that in the writing of the date opposite the signatures of the owners the persons so writing the same were not authorized by the owners so to do.

The power of the common council to enact ordinances is limited to those which are not inconsistent with the provisions of the charter or of the laws of the state. The charter has not, in express terms, provided that the petition shall be physically signed by the resident owner. It is, as we have seen, that "it shall be applied for by a majority of the resident owners." There is no provision that such owners must apply in person, nor, does any reason now occur to us why they may not appear through their duly authorized agents or attorneys, and if they may do so it would seem to follow that such owners may authorize the filling in of the date of such signing after their signatures. But we are of the opinion that the board of assessors was not called upon to determine the questions of law which arise upon the construction of the provisions of the charter and of the ordinances referred to. The petition, as we have seen, is addressed to the common council and was presented to it. It was referred to the board of assessors to determine certain questions of fact which would appear from the records on file in that office. The board of assessors was not a part of the law department of the city, nor were its members authorized or required to determine questions of law. The form of the petition and the manner in which the names were signed to the petition presented questions of law which the common council, through its officer, was called upon to determine and not the board of assessors.

The questions referred to the board of assessors, as we have seen, were three in number:

1. Did the petition contain the names of a majority of the resident owners of land fronting upon the portion of the street to be improved.

2. Did they represent two-fifths of the frontage; and

3. Had the lands been divided for the purpose of affecting such majority.

These were the questions presented to the assessors and these were the questions answered by their certificate. True, as we have seen by the allegation of the petition, the assessors erred in counting up the number of the resident owners, but errors of this kind are liable to occur. Assessors cannot always keep the records of their office up with the frequent changes in the ownership of real estate. Owners are liable to die and heirs at law thereby become vested with the title. They may be numerous and scattered and the assessors may not always be able to determine their number or names, and for a time may be left in ignorance even as to the death of the owner. It would, therefore, be difficult for them always to be accurate in determining the number of the owners. It was, doubtless, for this reason that the legislature saw fit to specifically provide that their " certificate shall be conclusive as to the facts." This provision of the charter appears to us to be controlling upon the right of the relator to review the work of the board. The assessors may have omitted in this case to count tenants in common that should have been counted. They may have failed to ascertain accurately the number of resident owners, but they are charged with no fraud or intentional violation of their duty, and in the absence of fraud or bad faith their certificate must be regarded, as the statute provides, conclusive as to the facts. (*Matter of Kiernan*, 62 N. Y. 457.)

The learned Appellate Division appears to have entertained the view that in counting up the number of the resident owners they intentionally omitted some of the tenants in common and only counted one person for each lot, thereby adopting a wrong basis of counting. We do not think the petition sustains the contention in this particular. We have quoted the wording upon this point. It is to the effect that they did not

count but one such resident owner when there were "two or more persons as owners;" but there is no allegation that there were two or more *resident* owners that they intentionally omitted to count if they knew of them. There may be two or more, or twenty or more tenants in common. They may be owners of an undivided interest and may not be *resident owners.* We, therefore, conclude that the contention of the Appellate Division is not borne out by the petition under review.

The orders of the Appellate Division and the Special Term should be reversed and the writ of certiorari quashed, with costs in both courts.

CULLEN, Ch. J., EDWARD T. BARTLETT, VANN, WERNER, HISCOCK and CHASE, JJ., concur.

Orders reversed, etc.