H. B. COWLES, *Appellant,* v. SCHOOL DISTRICT NO. 88 of Shawnee County, *Appellee.*

No. 18,415.

SYLLABUS BY THE COURT.

1. SCHOOL BUILDING BONDS—*Election—Petition—School Fund Commissioners.* Under chapter 257 of the Laws of 1911, which authorizes the voting and issuance of bonds for the building of schoolhouses in cities and school districts in excess of the amount permissible under limitations in force when the act was passed, provision is made that the permission to vote an excess amount must be obtained from the Board of School Fund Commissioners of the state through a petition of one-half of the electors of the district, asking the board of education or school district board to apply to the state board for the desired permission, and it is herein held that the purpose of the petition of the electors has been subserved when it has been presented to the school district board and the prayer of the petition is granted, and it is also held that the electors who signed the petition asking the school district board to

make the application to the state board have no right to withdraw their names from the petition after it is presented to and final action has been taken thereon by the school district board.

2. ——— *Same.* Signatures to such a petition may be legally attached by an agent of the petitioner.

3. ——— *Election and Proceedings Legal.* In the petition and order of permission herein the full amount of additional bonds permissible under the act of 1911 was asked for and allowed substantially in the language of the statute, and they are held to be sufficiently definite as to the amount of bonds desired and to be voted upon and also that the proceedings up to and including the vote upon the bonds were in substantial conformity with the statutory requirements.

Appeal from Shawnee district court, division No. 2. Opinion filed January 11, 1913. Affirmed.

*W. H. Cowles,* of Topeka, for the appellant.

*Robert Stone,* and *George T. McDermott,* both of Topeka, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an unsuccessful attempt to obtain an order enjoining the issuance of school district bonds. The appellant's attack on the execution and sale of the bonds proposed to be issued was based upon the claim that the initial steps had not been regularly taken. The district adjoins the city of Topeka, has a property valuation of $447,850 and contains about 213 qualified electors. A movement to secure the building of a new schoolhouse to cost about $10,000 was started. Under the law (Gen. Stat. 1909, § 7631), the issue of bonds was limited to one and one-half per cent of the taxable property of the district, unless permission to vote a larger sum was obtained from the Board of School Fund Commissioners of the state. By a recent act of the legislature (Laws 1911, ch. 257) that board is empowered to grant to a city or school district the authority to issue bonds for the erection of

school buildings "to an amount of not more than fifty per cent in excess of and in addition to the amount of bonds that may be voted under laws now in force." Under the general limitation of one and one-half per cent of the taxable property of the district, the appellee could issue bonds to the amount of about $6,700. To enable the district to vote and issue the necessary amount to build a schoolhouse costing $10,000, the electors presented a petition to the school district board on April 24, 1912. They asked that board to apply to the school fund commissioners for permission to issue bonds for the building of a new schoolhouse in "an amount not more than fifty per cent in excess of and in addition to the amount of bonds that may be voted under the laws now in force." The petition, which contained 119 names, was received and granted by the school district board, and that board, on May 1, 1912, made a formal application to the Board of School Fund Commissioners for authority to issue bonds in excess of the amount provided for under the general limitation. After the petition of the electors had been granted and the application of the school district board was pending before the state board, a number of electors presented a protest against the granting of permission to issue the additional bonds, and some of those protesting had previously signed the petition to the school district board. The state board appears to have treated the petition to the school district board as if it had been addressed to the state board itself, and names were permitted to be added to and withdrawn from the petition at the request of electors. Some of those who attempted to withdraw their names from the petition at a later time asked to have them reinstated, and some who had not signed the petition originally asked to have their names added to it. At the end of the parley the state board considered the wants and necessities of the district and subsequently made a finding that the existing conditions warranted the

granting of the permission asked for, and it thereupon authorized the calling of an election for the issuance of bonds in an amount not exceeding the limitation fixed in chapter 257 of the Laws of 1911, under the provisions of which the order was granted. Under this order a call was issued for an election to vote bonds in the amount of $10,000, and on June 15, 1912, the election was held, and the result was that 109 electors voted in favor of the proposition and 91 against it.

In this proceeding an attack was made upon the sufficiency of the petition to the school district board, in which that board was asked to apply to the state board for permission to issue bonds in excess of that allowed under the general limitation. First, it is claimed that it was not legally signed by the requisite number of electors. In chapter 257 of the Laws of 1911 it is provided that the petition to the school district board shall be signed by at least one-half of the electors. A petition was presented to that board which on its face appeared to be sufficient. It was presented and allowed without challenge of its sufficiency or opposition of any kind.

There is an attack on the petition because a number of the signatures were not autographic. Some of the names attached to the petition were signed by the husband or wife or some other agent of the petitioner, and were signed in the presence of the petitioner or by his verbal authority. The statute does not require that each petitioner shall perform the physical act of attaching his name to the petition, and in the absence of such a requirement no reason is seen why a person may not cause his name to be attached to such a petition by another. Indeed, we have a statute which contemplates that the names of persons will be signed to petitions addressed to officers, courts and legislatures by others, and therein it is made an offense to do so without authority from the person whose name is signed. (Gen. Stat. 1909, § 2849.) Of course, those

signed without authority or ratification are without effect, but under the provision in question it is enough if the signing was done by an agent with the authority of the petitioner, and in such a way as to be his act, and it devolves on those who allege a lack of authority to prove the claim. (*People, ex rel. Brownell, v. Assessors,* 193 N. Y. 248, 86 N. E. 466; *People ex rel. Holler v. Board of Contract, etc., of the City of Albany,* 2 How. Pr., n. s., 423; *Allen v. City of Portland,* 35 Ore. 420, 58 Pac. 509; *Bd. of Improvement Dist. v. Offenhauser,* 84 Ark. 257, 105 S. W. 265; *Portsmouth Savings Bank v. City of Omaha,* 67 Neb. 50, 93 N. W. 231; *City of Columbus v. Sohl,* 44 Ohio St. 479, 8 N. E. 299; *Tibbetts v. Street Ry. Co.,* 153 Ill. 147, 38 N. E. 664; *Merritt v. City of Kewanee,* 175 Ill. 537, 51 N. E. 867; *Day v. Fairview,* 62 N. J. Law, 621, 43 Atl. 578; 28 Cyc. 977.)

After final action upon the petition had been taken by the school district board, and the application was pending before the state board, an attempt was made, as we have seen, to withdraw and add names to the petition, but it was not then open for withdrawals and additions. The initiatory step is taken by the electors and their petition is addressed to the school district board, and not to the state board. The action of the state board is invoked by the application of the school district board, and notice of the filing of that application is required. The state board does not base its finding and judgment on the petition to the school district board, but it fixes a day for a hearing, and upon the evidence then offered, under rules which it prescribes, the application is either granted or denied. The purpose of the petition is to move the school district board to make the application to the state board, and that purpose had been subserved when the prayer of the petition was granted and the application made. At that time no petitioner had added or withdrawn his name

·from the petition, nor had any protest been made against the making of the application.

In regard to the time within which a petitioner who has changed his mind may withdraw his name from a petition, thère is a difference of judicial opinion. In some cases it has been held that withdrawals may only be made while a petition is in circulation and before it has been filed or presented for action. Some hold that withdrawals may be made until the petition has been filed and jurisdiction has attached, but that withdrawals will not be allowed which would defeat jurisdiction. A greater number of the authorities apply a more liberal rule, which permits a petitioner to withdraw his name at any time before final action is taken upon the petition by the officer, board or tribunal to which it is presented. In a number of the cases the right of withdrawal is regulated by statutory enactment, and consequently there are cases which fix the termination of that right at a point intervening between the presentation of the petition and final action thereon. (*Grinnell v. Adams,* 34 Ohio St. 44; *Seibert v. Lovell,* 92 Iowa, 507, 61 N. W. 197; *Orcutt v. Reingardt,* 46 N. J. Law, 337; *Bordwell v. Dills,* 70 Ark. 175, 66 S. W. 646; *State ex rel. Hawley v. Board of Supervisors of Polk County and another,* 88 Wis. 355, 60 N. W. 266; *Noble et al. v. the City of Vincennes,* 42 Ind. 125; *Webster v. Bridgewater,* 63 N. H. 296; *Littell v. Board of Supervisors,* 198 Ill. 205, 65 N. E..78; *Snedeker v. Matter Drainage District,* 124 Ill. App. 380.)

In a case note to *Sim et al. v. Rosholt,* 16 N. Dak. 77, 112 N. W. 50, in 11 L. R. A., n. s., 372, a great number of authorities on the subject are collected.

In *The State ex rel. v. Eggleston,* 34 Kan. 714, 10 Pac. 3, a question of the right to withdraw names from a petition for the removal of a county seat was considered, and it was said to be the duty of the board of ·county commissioners to strike from the petition the

Cowles v. School District.

names of all signers who asked for such withdrawal before final action was taken on the petition. This view accords with most of the authorities. Following that rule, it is clear that the right of a petitioner to withdraw his name could not be exercised after the school district board, to which the petition was presented, had taken final action thereon. It is unnecessary, therefore, to consider the regularity of the changes that were made while the matter was pending before the state board. It may be said, however, that after the changes had all been made by withdrawal, addition and reinstatement of names during the pendency of the application before the state board, it still contained the names of more than one-half of the electors of the district.

There is a contention, too, that the petition was defective because it did not ask the school district board to apply for permission to issue a definite amount of bonds, and also that the permission itself, which was granted by the state board, did not state a definite amount. As we have seen, the petitioners used the statutory language and asked for the additional fifty per cent authorized by the act of 1911. It is said that in asking for an excess of the amount "that may be voted for by the laws now in force" they, in effect, asked for an issue of $15,000; that is, fifty per cent in excess of the amount authorized under both the general and the exceptional limitations. It is reasonably clear from the use of the language of the act of 1911 that they intended that the application should be made for fifty per cent more than could be voted under the general limitation which was in force when the latter statute was enacted. The natural interpretation of the petition, as well as the order of the state board, was that the request for the permission, as well as the permission itself, fixed the maximum amount authorized by the act of 1911. Without that act, only $6700 could have been voted by the appellee, but under its

39—88 KAN.

provisions, and the permission of the state board, authority was given to increase the issue by adding to the $6700 derivable from the one and one-half per cent of the taxable valuation, fifty per cent of that sum, which is substantially $3300, and the two together constituted the amount which the district determined, at is annual meeting, should be expended on the new schoolhouse. That was the view taken by the school district board in making its application to the state board, when $10,000 was named as the amount of the proposed issue of bonds, and in the same document that sum was designated as the cost of the proposed new building. In the contest before the state board, both the advocates and opponents of the additional issue of bonds proceeded on the theory that the total amount of the proposed issue was $10,000. In the petition for an election to vote the bonds, as well as in the notice of that election, the amount of the proposed issue was specified as $10,000. We think the petition, order of permission, notice and call of election all indicated with reasonable certainty the amount of bonds to be voted for and used in the building of the new schoolhouse. There was no necessity for two elections, one under the general limitation and the other on the issuance of the additional amount. The statute evidently contemplates that after permission to vote the added amount has been obtained the proposition to be submitted is whether the whole amount authorized under both limitations shall be issued.

There are some other criticisms of the proceedings, but in all the preliminary steps there appears to have been a substantial compliance with the statutory requirements, and, therefore, the judgment of the district court will be affirmed.