No. 19,577.

ROBERT M. HAY et al., *Plaintiffs*, v. THOMAS W. DORN, as City Clerk of the City of Junction City, *Defendant*.

### SYLLABUS BY THE COURT.

1. CITY OF SECOND CLASS—*Petition for Recall of Officer—Right of Petitioner to Withdraw Name.* After a petition has been filed by the electors of a city of the second class for the recall of an officer of the city, the signers to such petition may revoke their action in signing the petition at any time before the petition is finally acted upon.

2. SAME—*Invalid Petition for Recall of Officer.* Where such petition, after the demand for the recall of an officer, also prays for the election (or nomination) of another person named to succeed the officer to be recalled, the petition is invalid.

Original proceeding in mandamus. Opinion filed November 14, 1914. Writ denied.

*Thomas Dever,* of Junction City, for the plaintiffs.

*I. M. Platt,* and *J. V. Humphrey,* both of Junction City, for the defendant.

The opinion of the court was delivered by

SMITH, J.: An agreed statement of facts was filed in this case. Briefly stated, they are as follows: The city of Junction City is a city of the second class, and M. H. Foss is one of the commissioners of the city. At the last election (prior to the proceedings in this case) for mayor of the city 1290 votes were cast for all candidates for that office. Thomas Dorn was on and since May 4, 1914, city clerk of the city, and on that date succeeded F. R. Conlon, who had theretofore been such city clerk. On April 27, 1914, a petition, signed by 460 persons, was filed with the city clerk, which petition conforms to the statute except it is claimed to be invalidated by the following clause, in-

Hay v. Dorn.

serted after the petition for the recall of commissioner Foss, to wit: "and for the election of F. W. Oesterhaus, to succeed said M. H. Foss as commissioner of said city." Also, it is agreed that 331 of the petitioners on such petition were shown by the registration books of the city to be entitled to vote for a successor to Foss as commissioner. There is some dispute as to the qualifications of some of the signers to such petition not included in the 331 agreed to as qualified. The merits of these contentions we need not consider, as under the statute such a petition is required to be signed by twenty-five per cent of the qualified voters, which is 323, and it is agreed that 331 signed the petition—eight more qualified voters than is required.

Also, it is agreed that the name of F. W. Oesterhaus did not appear in such petition as a candidate for election to the office at the time it was signed by some of the petitioners, but was written in thereafter; that six days after such recall petition was filed, and before it was acted upon by the city clerk, nineteen separate papers, each signed by one of the 331 petitioners, were filed with the city clerk; that these papers were respectively written revocations of the signers thereof in signing the recall petition. Each of such papers directed the clerk to remove the signature of the signer from such petition.

On May 7, 1914, the city clerk filed in his office a statement, under his hand and seal, in effect, that the petition was insufficient, and was not signed by a sufficient number of electors entitled to vote for a successor to the incumbent, and that the petition was not in due form. The clerk also notified the principal petitioners of the nature of the certificate he had made. On May 16, 1914, and within ten days from the making of the certificate by the clerk, an additional petition or an amendment to the original petition for recall, which was in the identical form of the original petition, was filed with the clerk and was signed by 23 persons,

18 of whom it is agreed were entitled to vote for a successor to commissioner Foss; that on May 15 and 16, 1914, and before the filing of the amendment to the recall petition, papers were filed signed by 95 of the signers to the recall petition which purport to revoke their actions, respectively, in signing the recall petition.

The question presented is whether or not electors, after they have signed a recall petition and before it is finally acted upon, can revoke the action and thereby preclude their being counted in favor of the recall. By the agreement, 331 registered voters, entitled to vote for a successor to Foss, signed the original petition, whereas, under the statute, twenty-five per cent of the 1290 votes cast for all candidates for mayor at the preceding election, or 323 voters, was sufficient to compel the calling of an election for a successor, but before such original petition was acted upon 19 of the signers thereto filed with the clerk written revocations of their action. Within the ten days provided by statute for amendments to recall petitions, 18 electors signed and filed an amendment to the original petition asking for the recall, but during the same time, and within ten days from the filing of the original petition, 95 electors who had signed the recall petition signed and filed with the clerk a revocation of their action.

It is contended by defendent that at the time the clerk made his first certificate the original recall petition was insufficient. This contention is correct if the electors had a right to revoke their action and is incorrect if they did not have such right, and the same is true of the clerk's second certificate, deciding that the petition after the amendments were filed and the revocations were filed was insufficient.

It is, however, further contended by the defendant that the inclusion in the recall petitions of the clause, "and for the election of F. W. Oesterhaus to succeed

said M. H. Foss as commissioner of said city," vitiated the petitions.

On the question of the right of petitioners to revoke their action in signing a petition for recall we have not been cited to any relevant case nor have we found one in this or any other state where the commission form of government is practiced and the right of recalling officers is given by statute.

In *The State, ex rel., v. Eggleston,* 34 Kan. 714, 10 Pac. 3, an analogous question is presented, and the same principle is involved as in this case. In that case it was said:

"Where a petition is presented to the board of county commissioners of a county for the removal and relocation of a county seat, the commissioners should strike therefrom the names of all persons who make application to have their names stricken off, before final action is taken upon the petition. If this is not done, the signers of the petition who asked their names to be stricken off should not be counted by the board of commissioners in determining the number of petitioners for the removal and relocation of the county seat.

"Where a petition is presented to the board of county commissioners for the removal and relocation of a county seat, and after disregarding all of the ineligible petitioners and the signers who asked their names to be stricken off before final action was taken thereon, the petition contains less than three-fifths of the legal electors of the county whose names appear upon the last assessment rolls of the county, such petition is wholly insufficient upon which to order an election for the relocation of the county seat; and the county attorney of the county in which the petition is presented may, in the name of the state, maintain an action to enjoin the board of county commissioners from canvassing the votes cast at and returned from the several precincts of the county at an election ordered upon such a petition." (Syl. ¶¶ 1, 2.)

In *Cowles v. School District,* 88 Kan. 603, 129 Pac. 176, an analogous question was also presented. It was desired by some of the residents of a school district to

build a schoolhouse at a greater cost than allowed by the general statutes. The issue of bonds for such purpose is limited by section 7631 of the General Statutes of 1909 to one and one-half per cent of the taxable property in the district unless permission to vote a larger sum was obtained from the board of school-fund commissioners of the state. The method of securing such permission was by petition of the voters of the district requesting the district board to make application to the board of school-fund commissioners. After final action upon the petition of the voters to the school board and when the application was pending before the state board, an attempt was made to withdraw from and also to add names of voters to the petition, and it was held in that case that after the final action by the school-district board no withdrawals from or additions to the names on the petition were permissible. While the question was not in issue as to additions and withdrawals before the school-district board had taken final action, the decision turns upon the time of making such additions or withdrawals, and the clear inference from the decision is that such changes in the petition might properly have been made before final action thereon.

In *Price v. City of McPherson,* 92 Kan. 82, 139 Pac. 1162, the time of presenting petitions and protests is discussed and, inferentially, it is held that changes may be made before but not after final action has been taken in the matter.

In *Rodgers v. City of Ottawa,* 83 Kan. 176, 109 Pac. 765, the city council passed and published a resolution, as provided by law, declaring it necessary to grade and curb a certain street. The statute relevant thereto provides, in substance, that if a majority of the resident owners of property liable to taxation for the improvement do not file their protest against the improvement, the council shall have power to cause the work to be done, etc. The time there was specified by statute, and the city undertook to proceed because a majority of the voters had not protested. The twenty

Hay v. Dorn.

days, allowed by law for making the protest, had not expired, and the court held that they were entitled to the full time to make the protest.

By analogy, we think the electors of the city in this case had a right to produce additional petitions for the recall, and that persons who had signed the petition for recall had the right to revoke their action thereon during and not after the ten days which were allowed by the statute for the amendment after the first petition had been held by the city clerk as insufficient. Within that time a sufficient number of qualified voters revoked their action in signing the petition for the recall, and the number of petitioners left thereon, including the petitioners who had signed for the recall during the same time, was not sufficient to constitute twenty-five per cent of the total vote cast for mayor at the last preceding election.

The statute does not authorize the naming, in a recall petition, of another person to be nominated or elected as a successor to the incumbent upon his removal. Some electors might desire the recall of the incumbent provided the successor named in the petition was to be elected, but otherwise would be opposed to the recall. Such a petition presents to the electors a dual question, and is illegal. (*Leavenworth v. Wilson*, 69 Kan. 74, 76 Pac. 400.) The petition in such cases must present the single question, viz.; Shall the city officer, naming him, be recalled?

The purpose of the recall law is that the competency and integrity of the incumbent officer is to be so far tested through the vote by petition for a referendum election that twenty-five per cent of the electors petitioning therefor may compel the calling of an election. The only proper question to be determined by the city clerk is whether the prescribed number of electors, qualified to vote for a successor to the officer sought to be removed, have petitioned for the recall election. The petitions are therefore invalid.

The writ is denied.