No. 22,081.

THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF OSBORNE, *Appellee*, v. THE CITY OF OSBORNE et al., *Appellants*.

SYLLABUS BY THE COURT.

CITY—*Street Improvements Around Courthouse Square—County Not a Resident Owner of the Square—Not Entitled to Protest against Street Improvements.* Under the act authorizing cities of the second class to improve its streets, wherein it is provided that resident owners of more than one-half of the property subject to taxation for the improvement may protest (Gen. Stat. 1915, § 1764), a county is not deemed to be a resident owner of the square on which the courthouse stands, and therefore is not entitled to protest against the improvement of a street upon which the courthouse square fronts.

Appeal from Osborne district court; RICHARD M. PICKLER, judge. Opinion filed April 12, 1919. Reversed.

*N. C. Else,* of Osborne, for the appellants.

*J. K. Mitchell, Harvey McCaslin,* both of Osborne, *C. L. Kagey,* and *Omer D. Smith,* both of Beloit, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: The city of Osborne took initiatory steps towards the pavement of several streets of the city, proceeding under the provisions of the latest act on the subject (Gen.

Stat. 1915, § 1764). A resolution of the mayor and council declaring the improvement to be necessary, had been passed and published, and within twenty days after the publication several of the resident owners protested against the improvement. The mayor and council decided that the protest was insufficient to prevent the improvement, as the resident owners of one-half of the property liable for taxation had not signed the protest. Among others, it had been signed by the chairman of the board of county commissioners in behalf of the county of Osborne, which owned the courthouse square situated within the taxing district. If the chairman of the board had the right to represent the county and to remonstrate, the protest was sufficient to block the improvement, and, on the other hand, if he had no such authority, the protest was without effect, as the mayor and council determined. The district court took a different view of the question, and in an injunction proceeding, instituted by the county, held that the chairman of the board had a right to protest, and an injunction against the making of the improvement was granted. The controlling statute provides that when the proceedings are initiated by a resolution of the council, the improvement cannot be made if the resident owners of more than one-half of the property liable for taxation protest. Prior to 1913 the protest of a majority of the resident owners in a taxing district, regardless of the extent of the land owned by them, was sufficient to prevent the making of an improvement in cases where the proceedings were instituted by a resolution of the city council or commission. The original act (Laws 1872, ch. 100) has been amended many times, but the protest of a majority of resident owners was sufficient until 1913, when an amendment was made to the effect that a protest is unavailing unless it is signed by the resident owners of more than half of the property affected. (Laws 1913, ch. 112, § 1, Gen. Stat. 1915, § 1764.) A different rule is prescribed for cities of the second class having more than 10,000 inhabitants, but the city of Osborne is not within that class, and that statute has no application here. (Laws 1901, ch. 366, § 4, Gen. Stat. 1915, § 1757.)

The property of the county was situated within the proposed taxing district, and is liable to taxation for the improvements (*Comm'rs of Franklin Co. v. City of Ottawa*, 49 Kan. 747, 31

Pac. 788), and therefore we have the question: Is the county of Osborne a resident of the city of Osborne, within the meaning of the statute, and is the chairman of the board of county commissioners qualified to act for the county and to make an effective protest against the improvement? A county is a creature of the statute, and it and its officers can exercise no powers except such as the statute confers upon them. It may purchase and own property for public purposes, but it is not enough that it owns property, as it takes both ownership and residence to give the right to protest against improvements. How may a county become a resident of a city, and where is its dwelling place? In a sense, a corporation, public or private, has no local residence. It exists only in contemplation of law and cannot in fact have a residence in the sense that a natural person is a resident. (*Kimmerle v. City of Topeka,* 88 Kan. 370, 128 Pac. 367.) It occupies all the territory within its boundaries and may be said to be a county within a county. Some of the powers of the board of county commissioners may be exercised outside of the county seat and in any part of the county. Having only such status and power as the law provides, we must look to the statute to determine whether it may protest, and thus prevent the making of an improvement within the city. The legislature, as we have seen, has expressly clothed the county with the power of ownership, but no statute is found declaring its place of residence. There is a provision that, in the interpretation of statutes—

"The term 'residence' shall be construed to mean the place adopted by a person as his place of habitation, and to which, whenever he is absent, he has the intention of returning." (Gen. Stat. 1915, § 10973, subdiv. 23.)

This definition cannot well be applied to a county, and a majority of the court holds that, in the absence of statutory authority, express or implied, it cannot be held that a county is a resident owner with the right to promote or obstruct the making of improvements within a city in which it may happen to own property. Private corporations are deemed to be persons within the meaning of certain statutes, and by analogy they are deemed to be residents of the places where their corporate business is done. (*The State v. Bogardus,* 63 Kan. 259, 65 Pac. 251; *Kimmerle v. City of Topeka,* supra.) These, how-

ever, are business organizations and differ materially from counties, which are but agencies of the state, created by general laws to aid in the administration of the state government. Although corporate in form, a county is a subdivision of the tate, and is organized for political, and not for business, purposes, and hence the rules governing private corporations do not apply to counties. Its powers are expressly defined by law and a claimed power not found in the statutes does not exist.

It follows that the judgment must be reversed and the cause remanded for further proceedings.

JOHNSTON, C. J. (dissenting) : I am unable to concur in the conclusion reached in the foregoing opinion.

A county is a body corporate clothed with power to acquire and own property, and it has been determined that a square on which the courthouse is built is subject to assessment for municipal improvements. (*Comm'rs of Franklin Co. v. City of Ottawa*, 49 Kan. 747, 31 Pac. 788.) A county, being the owner of property abutting on the street to be improved, is interested in the project to the same extent as any other owner of property, and for the protection of the property there is the same necessity to petition for or protest against the benefits or burdens of a proposed improvement as there is for a private owner to protect his property. Under the earlier statutes, such protests could be made by a majority of the resident owners, regardless of the extent of the ground owned by them, on the line of the improvement, but the present statute makes the property subject to taxation the controlling element. A protest to be effective now must be signed by resident owners of more than one-half of the property affected, and it is immaterial whether that part is owned by one or more residents. A great part of the property subject to assessment for the improvement in question is owned by the county, and no owner is more concerned in the financial burden to be imposed than is the county. Of course, ownership is not enough to qualify it as a protestant, as residence as well as ownership is necessary to give the county the status of a resident owner. Residence is said to be an attribute of natural persons, rather than of corporations, but for many purposes a corporation is treated as a person, and is considered to be a resident, as well as a citizen. (*The*

*State v. Bogardus,* 63 Kan. 259; 65 Pac. 251; *Robinson v. Railway Co.,* 67 Kan. 278, 72 Pac. 854; *Kimmerle v. City of Topeka,* 88 Kan. 370, 128 Pac. 367; *Galveston &c. Railway v. Gonzales,* 151 U. S. 496.)

A county is given, not only the power to purchase and own property, but also the power to sell and convey it, and to make any order respecting the same as may be deemed to be conducive to the interests of the inhabitants, or to do any or all other acts in relation to the property and concerns of the county necessary to the corporate or administrative powers. (Gen. Stat. 1915, § 2528.) These broad powers are to be exercised through the agency of a board of commissioners. The place where the corporate business of the county is done is in the courthouse at the county seat, and in the office of the county clerk where the records of their official acts are kept. In general, the residence of a corporation is in the state of its creation and in the place in which it has its headquarters, and,

"In the absence of express statutory provision fixing the locality of the residence of a corporation for particular purposes within the state by which it was created, the general rule is that its residence is where its principal office or place of business is." (7 R. C. L. 141.)

Under that rule, the residence of the corporate entity we call the county is in the courthouse at the county seat. At its meeting at the courthouse the board is required—

"To represent the county and have the care of the county property, and the management of the business and concerns of the county, in all cases where no other provision is made by law." (Gen. Stat. 1915, § 2549, subdiv. 5.)

No duty is more important than that of protecting the property of the county from extraordinary expenses or that of resisting the imposition of financial burdens upon the property of the county. It is hardly conceivable that the legislature intended to exclude the county from the advantages and opportunities given to other owners; and, at any rate, no exception appears to have been made of corporate owners whose only residence is in the city making the improvement. In the provision relating to service of process, the residence of a county is deemed to be in the courthouse where the business of the county is transacted, and it is provided that service shall be made on the clerk of the board. (Gen. Stat. 1915, § 2533.) In that office the seal of the county is kept and used, and the busi-

ness of the county transacted by the other officers is done in the courthouse at the county seat. The residence of a county or other corporation is not where its officers may happen to reside, but it is at the place of its charter home, and where its principal place of business is. (*Galveston &c. Railway v. Gonzales,* supra.)

*Stevenson v. Shawnee County,* 98 Kan. 671, 159 Pac. 5, tends to support the view that the chairman of the board had authority to sign the protest. There it was contended that the mayor of the city of Topeka had no authority to sign a petition for the pavement of a highway, a portion of which was within the limits of the city. The statute provided that whenever sixty per cent of the owners along a highway, who own at least fifty per cent of the land to be taxed for an improvement, should petition the board of county commissioners for the improvement, it should be made. Because no specific provision was made for the signing of the petition by the mayor, his right to do so was challenged. It was held:

"The city of Topeka has power to sue and be sued, and to hold real property for the use of the city. (Gen. Stat. 1909, § 866.) It has power to protect that property by whatever legal means may be necessary. It can do the same things with reference to its real property that any other property owner can do." (p. 677.)

So here the county has power to sue and be sued, and it has been given express power to protect its property, and it also may employ the legal means specified in the statutes relating to improvements, and do the things to that end that any other property owner may do.

It has been decided that a school district may petition for the improvement of a street upon which its property abuts. There was no specific authority to sign the petition, and it was conceded that a school board has only such powers as are given it by statute, but it was held that a statute which provided that the property of a school district shall be treated like the property of other owners, and be subject to assessment for improvements, impliedly gave it the power to petition. (*Berry et al. v. City of Stillwater et al.,* 49 Okla. 560.) It was likewise held that boards of education in Ohio were the owners of property within the meaning of a street-improvement law, and had the right to sign petitions for improvements, and this holding was based on the power given to such boards to ac-

quire and own property. (*Becker v. Columbus*, 9 Ohio Cir.
Dec. 855.) It is my view that within the meaning of the im-
provement statute, a county is a resident of the county seat,
and that the county of Osborne is a resident owner of the
property in the taxing district in the city of Osborne, and was
entitled to protest against the proposed improvement the same
as other resident owners affected by the improvement.

WEST and MARSHALL, JJ., concur in the dissent.