No. 28,037.

F. A. BENTLEY et al., *Appellants*, v. L. L. GUNN et al., *Appellees.*

(266 Pac. 28.)

SYLLABUS BY THE COURT.

1. MUNICIPAL CORPORATIONS—*Proceedings for Street Improvement in City of Second Class—Statutory Requirements.* Proceedings by a city of the second class "to repave, repair, and otherwise improve (and to recurb and regutter where necessary)" a certain street therein, examined and held to have been under section 12-602 of the Revised Statutes, and in conformity with that section.

2. SAME—*Specifying Place of Improvement in Resolution and Ordinance—Injunction.* Proceedings by a city of the second class to "repave, repair, and otherwise improve (and to recurb and regutter where necessary)" a street in the city are not rendered subject to an injunction at the suit of taxpayers owning property along the street by the fact that neither the resolution nor the ordinance specifies the place or places where the recurbing and regutter-ing are to be done.

3. SAME—*Protest—Time for Withdrawal of Names.* Under section 12-602 of the Revised Statutes, a city adopted a resolution providing for the improvement of a street. A protest signed by resident property owners was filed.

Municipal Corporations, 28 Cyc. pp. 972 n. 59, 990 n. 62, 991 n. 77, 1020 n. 3. Owners, 2 A. L. R. 790.

At 10:45 p. m. on the twentieth day after the last publication of the resolution names were withdrawn from the protest. *Held,* that they were withdrawn in time.

4. SAME—*Street Improvements—County Not Deemed Resident Property Owner.* The rule declared in *Osborne County v. City of Osborne,* 104 Kan. 671, that a county is not to be deemed a resident property owner in proceedings by a city to improve a street along the property on which a courthouse stands is adhered to and followed.

Appeal from Barton district court; RAY H. BEALS, judge. Opinion filed April 7, 1928. Affirmed.

*Charles L. Carroll,* of Great Bend, *Frank L. Martin* and *James N. Farley,* both of Hutchinson, for the appellants.

*Clyde Allphin,* of Great Bend, and *W. S. Jenks,* of Ottawa, for the appellees.

The opinion of the court was delivered by

MARSHALL, J.: The plaintiffs, thirty-seven taxpayers of the city of Great Bend, prosecuted this action against the mayor and commissioners· of that city and the board of county commissioners of Barton county to prevent the "grading, regrading, paving, repaving, curbing and recurbing, guttering and reguttering, macadamizing and remacadamizing, or otherwise improving Main street" in said city. Judgment was rendered in favor of the defendants, and the plaintiffs appeal.

The action was tried on admission made by counsel for the parties hereto without the introduction of evidence. Findings of fact and conclusions of law were made as follows:

"1. I find that the city of Great Bend is a city of the second class, and operating under the commission form of government.

"2. I find that Main street in the city of Great Bend, Kan., is now a paved street and was originally curbed and guttered and constructed by the city about 1915 or 1916.

"3. I find that on the 25th day of October, 1926, a resolution was passed declaring that it was necessary to repave, repair and otherwise improve, and to recurb and regutter, where necessary, Main street, in the city of Great Bend, Kan., and that said resolution was published according to law.

"4. I find that within twenty days from the date of the last publication of the resolution the resident owners of more than one-half of the property liable to taxation therefor, including those who withdrew their names within twenty days, filed with the city clerk of said city their protest against such improvements. I make this finding from the admissions of the parties during the argument of this case and not from any evidence introduced. The petition makes such an allegation, and the answer expressly denies it, but there was no

evidence introduced one way or the other on this proposition and no stipulation made thereto, except such as were made during the argument.

"5. I find that on November 22, 1926, and within twenty days from the last publication of the resolution, certain writings called 'Withdrawals of Names from Protest' were duly filed with the city clerk of the city of Great Bend, Kan., and I find that the same were filed within twenty days from the last publication of the resolution.

"6. I find that Lafayette park in the city of Great Bend, Barton county, Kansas, is the tract of land on which the present courthouse of Barton county, Kansas, is located, and I find that the first courthouse was commenced on said tract of land about the year 1873, and that ever since said time the commissioners of Barton county, Kansas, have exercised dominion and ownership over the same, and there is no pretense of contention by anyone that anybody but Barton county, Kansas, owns this tract of land; and I find that there is no controversy between the city of Great Bend, Kan., and the commissioners of Barton county, Kansas, as to the ownership of said tract of land, but that all persons know and agree that said tract is owned by Barton county, Kansas; that the former courthouse was located upon this tract, and that Barton county, Kansas, has been in possession and ownership of said tract of land, known as 'Lafayette park,' since 1873.

"7. I find that on the 7th day of December, 1926, the governing body of the city of Great Bend, Kan., passed an ordinance reciting that the resident owners of more than one-half of the property liable for taxation did not within twenty days from its publication file with the city clerk a protest against the improvements, and that afterwards, on the 30th day of December, 1926, the city clerk of Great Bend published an advertisement for proposals for constructing, repaving and street improvements, and that thereafter on the 15th day of January, 1927, the mayor and commissioners, being the governing body, passed ordinance 602, relating to repairing, repaving, recurbing, reguttering and otherwise improving the portion of Main street in controversy in this action, and providing for the payment of the costs; and I find that after the advertisement for bids was published there was filed with the city clerk of Great Bend, Kan., certain alleged specifications, plans and forms of contract, and that the same was filed on the 31st day of December, 1926.

"8. I find that all of the said proceedings were published in the manner and form required by statute.

"9. I further find that the governing body of the city of Great Bend, Kan., proceeded under section 12-602 Revised Statutes, 1923.

"10. I find from the admissions of the parties that all the footage included in the ordinance, and which includes Lafayette park, being the courthouse square, and excludes the United States post office, is 1,071,767.5 square feet.

"11. I find from the admission of the parties that the withdrawals amount to 80,500 square feet.

"12. I find from the admissions of the parties that Lafayette park, or the courthouse square, has a footage of 99,900 square feet, and I find that the resident property owners who signed the protest against the resolution, and whose names were not withdrawn within twenty days, amounted to 499,861 square feet.

"Conclusions of Law.

"I make the following conclusions of law:

"1. Lafayette park, or the courthouse square, belongs to Barton county, Kansas.

"2. The withdrawals of the signatures from the protest were valid.

"3. The withdrawals of the signatures from the protest were filed with the city clerk of the city of Great Bend, Kan., within twenty days from the last publication of the resolution declaring the improvement necessary.

"4. The governing body of the city of Great Bend had the right to proceed under section 12-602, Revised Statutes 1923, in improving the street in controversy.

"5. It was discretionary with the governing body of the city of Great Bend whether they would proceed under section 12-602 or section 12-614, Revised Statutes 1923.

"6. The request for an injunction against the improvements ordered by the governing body of the city of Great Bend, Kan., is denied.

"7. Judgment goes for the defendants for costs."

1. The plaintiffs contend that the governing body of the city did not proceed in the manner prescribed by law to make the improvements desired. The city officers contend that they proceeded under section 12-602 of the Revised Statutes, which, in part, reads:

"Whenever the governing body of any city shall deem it necessary to grade, regrade, pave, repave, curb, recurb, gutter, regutter, macadamize, remacadamize, or otherwise improve any street, avenue, or any part thereof, for which a special tax is to be levied, as herein provided, said governing body shall by resolution declare such work or improvement necessary to be done, and such resolution shall be published for six days in the official paper of the city, if the same be a daily paper, and for two consecutive weeks, if the same be a weekly, and if the resident owners of more than one-half of the property liable for taxation therefor shall not within twenty days from such last publication file with the clerk of said city their protest against such improvement, the governing body shall have power to cause such work to be done or such improvement to be made, and to contract therefor and to levy taxes as herein provided. Whenever a majority of the resident owners of real property liable to taxation for the improvement in two or more adjacent blocks shall petition the governing body to grade, regrade, pave, repave, curb, recurb, gutter, regutter, macadamize, remacadamize, or otherwise improve the same, the governing body shall cause such work to be done or such improvement to be made, and shall contract therefor, and shall levy taxes for all such improvements as herein provided upon the property on each side of said street to the middle of the block. The sufficiency of said protest or petition as to the ownership of the property shall be determined by the record in the office of the register of deeds at the time of the adoption of said resolution. The cost of grading, regrading, paving, repaving, curbing, recurbing, guttering, reguttering, macadamizing, remacadamizing, or otherwise improving intersections of

streets and the cost of making any of said improvements in streets, avenues and alleys running along or through city property shall be paid by the city at large, for which general improvement bonds of the city may be issued according to law."

The plaintiffs contend that the authority to make the improvements contemplated by the city is given by section 12-614 of the Revised Statutes:

"That whenever the governing body of any incorporated city of the second or third class shall deem it necessary to resurface or repair any paved street or any portion thereof, which paved street was originally curbed, guttered and a base and surfacing constructed in accordance with specifications; and the surfacing of such paved street by reason of the wear and tear of traffic is in a condition which requires repairing or resurfacing in order to preserve the base of same and to provide a reasonably smooth wearing surface, the same may be ordered by resolution and shall be done at the expense of the city and the payment of the cost of such resurfacing or repairing may be made by the issuance of improvement bonds of the city. . . . *Provided,* That before such bonds shall be issued and the work begun under the provisions of this act, a question of performing such work and issuing such bonds shall be submitted to a vote of the electors of the city. A majority of the votes cast at a special election held for such purpose, or a majority of the votes cast on the proposal at any general election when the question is submitted shall be considered sufficient to approve the proceedings under this act. Said election may be called by the governing body of the city at any time when they deem such action advisable. The election shall be held in accordance with the general laws of the state governing elections for a similar purpose."

The proceeding to improve the street was initiated by resolution, in part, as follows:

"*Be it resolved by the mayor and board of commissioners of Great Bend, Kan.,* That it is necessary to repave, repair and otherwise improve (and to recurb and to regutter where necessary) Main street between the north line of the right of way of the Atchison, Topeka & Santa Fe Railway Company and the south line of Eighteenth street, in the city, of Great Bend, Kan."

That resolution was first published October 27, 1926. Afterward, an ordinance was passed in obedience to that resolution, which provided:

"Section 1. That Main street in the city of Great Bend, Kan., be repaved, repaired, recurbed, reguttered and otherwise improved between the north line of the right of way of the Atchison, Topeka & Santa Fe Railway Company and the south line of Eighteenth street, in said city, in accordance with the plans and specifications provided by the engineer for said city and on file with the city clerk.

"Sec. 2. That for the purpose of providing for the cost of such improve-

ments, except the squares and areas formed by streets and alleys crossing said Main street, an assessment shall be made for each block of improvement separately on all lots and parcels of ground within the taxing district as provided by law, such assessment to be according to the assessed value of such lots and improvements thereon. . . .

"SEC. 3. That for the purpose of providing for the payment of cost for improving the squares and areas formed by the intersection of streets and alleys with the said street to be improved, and to provide for the payment of the cost of such parts of the improvement of said street that is not a legal charge as a special assessment against the lots and parcels of ground above mentioned, an assessment shall be made upon all of the taxable property of the said city of Great Bend. . . ."

None of the proceedings of the governing body of the city conformed to the requirements of section 12-614. They did conform to the requirements of section 12-602, except that it does not use the word repair. Section 12-614 does use that word. The authority given to the governing body of the city to regrade, repave, regutter, remacadamize, or otherwise improve any street is equivalent to authority to repair. Except for the use of the word repair, in the resolution and ordinance, the proceedings of the governing body of the city strictly conformed to section 12-602. The use of that word did not deprive the governing body of the city of authority to make the contemplated improvements under section 12-602.

2. It is argued that the proceedings of the city were bad because the resolution provided for recurbing and reguttering where necessary without specifying where such recurbing and reguttering were necessary. Neither the resolution nor the ordinance indicated the places that should be recurbed or reguttered. The specifications for the work called for the removal of two hundred lineal feet of old gutter and the placing of 1,763 feet of new gutter.

The principal part of the improvement contemplated by the resolution and the ordinance was repaving the street. Some of the gutter on the street to be improved was evidently in bad condition, probably in different places. The city had authority under section 12-602 of the Revised Statutes to recurb and regutter where necessary. The failure of the resolution and of the ordinance to specify where the recurbing and reguttering were necessary did not render the proceedings so irregular as to render them subject to an injunction at the suit of taxpayers owning property along the street.

3. Attention is directed to the fourth and fifth finding of the court. The list of withdrawals of names from the protest mentioned in the

fifth finding were made at 10:45 p. m. on the twentieth day after the publication of the resolution to improve the street. The plaintiffs contend that the withdrawal was not made in proper time. The signers of the protest had the right to withdraw their names from it. (*State, ex rel., v. Eggleston,* 34 Kan. 714; 10 Pac. 3; *Hay v. Dorn,* 93 Kan. 392, 144 Pac. 235.) The right was recognized in *Cowles v. School District,* 88 Kan. 603, 607, 129 Pac. 176; *Price v. City of McPherson,* 92 Kan. 82, 84, 139 Pac. 1162; *State, ex rel., v. City of Independence,* 114 Kan. 837, 839, 221 Pac. 245. They had the full period of twenty days from the date of the last publication of the resolution in which to withdraw their names. (*Rodgers v. Ottawa,* 83 Kan. 176, 109 Pac. 765.)

In *King v. City of Parsons,* 95 Kan. 654, 149 Pac. 699, the court said:

"In an action to recover against a city for damages caused by a defective sidewalk a statement complying in all respects with the provisions of section 870 of the General Statutes of 1909, giving the time, place and circumstances of the accident, was handed to the city clerk at his residence at 11:15 p. m. The next morning the clerk took the notice to his office and stamped it as filed on that date, which was one day more than four months from the time plaintiff was injured. *Held,* that there was a compliance with section 870 of the General Statutes of 1909, requiring the statement to be filed 'with the city clerk' within four months after the injury." (Syl. ¶ 1.)

The withdrawals were made in time.

4. The plaintiffs contend that the county should be considered a resident owner of property in determining whether or not a protest against the improvement has sufficient signatures thereto. The plaintiffs recognize that a contrary rule was declared in *Osborne County v. City of Osborne,* 104 Kan. 671, 180 Pac. 233, but ask that this question be reconsidered by this court. In *Osborne County v. City of Osborne,* 104 Kan. 671, 180 Pac. 233, this court said:

"Under the act authorizing cities of the second class to improve its streets, wherein it is provided that resident owners of more than one-half of the property subject to taxation for the improvement may protest (Gen. Stat. 1915, § 1764), a county is not deemed to be a resident owner of the square on which the courthouse stands, and therefore is not entitled to protest against the improvement of a street upon which the courthouse square fronts."

The question was there fully presented to the court and was carefully considered. The rule there stated is now adhered to and followed.

The judgment is affirmed.