No. 38,284

W. J. Horejsi, et al., *Appellants,* v. The City of Holyrood, A Municipal Corporation, et al., *Appellees.*

(231 P. 2d 215)

Opinion filed May 12, 1951.

*V. E. Danner,* of Ellsworth, argued the cause and *H. A. Santry,* of Ellsworth, was with him on the briefs for the appellants.

*C. L. Clark,* of Salina, argued the cause and *James P. Mize* and *Jason K. Yordy,* both of Salina, were with him on the briefs for the appellees.

The opinion of the court was delivered by

Smith, J.: This was an action to enjoin a governing body of a city from entering into a contract for paving some of the city streets. Judgment was for defendants. The plaintiffs have appealed.

The action was brought by some twenty-two resident taxpayers of the city whose property will be liable for the cost of the paving. The contemplated paving consists of three projects. The petition first set out three resolutions, the initial steps in a paving project in a city of the third class. These resolutions provided that the designated blocks "shall be paved and graded with such excavation as may be necessary". Resolutions 8, 9 and 10 were identical except for the streets described. Following the adoption of these resolutions the city enacted ordinance No. 222. It first recited the

adoption of the resolutions; then recited that the resident owners of more than one-half of the property liable for taxation for paving had not within twenty days of the last publication of the resolutions filed with the city clerk their protest against the paving. It then provided that various blocks described in the three different projects be paved; that the improvements be carried on in accordance with plans and specifications provided by the engineer of the city and on file with the city clerk; that the improvements except for intersections and along city owned property be assessed against the lots and parcels of land liable therefor in the manner provided by law and that the cost of the improvements of intersections and abutting city-owned property be assessed against the city at large and paid from taxes levied against all taxable property in the city as provided by law. The ordinance then contained some provisions with reference to the levy and collection of taxes and the issuance of bonds, which are of no concern to us here. With reference to the foregoing resolutions and ordinances the petition then alleged that within less than twenty days from the last publication of the resolutions the resident owners of more than one-half of the property liable for taxes for the improvements filed their separate protests with the city clerk against each of them; that all the protestants had been advised by letter that the governing body intended to let a contract for the paving; that it requested in the letter that if plaintiffs intended to sue the city to prevent its proceeding that they do so before the city had incurred liability for plans and specifications.

The petition then alleged that the resolutions and the ordinance failed to confer power on the governing body to cause the improvements to be made and they were illegal and void because they failed to set out the general character of the improvement so as to enable taxpayers, who might be liable therefor, to tell the amount of their potential burdens as taxpayers, the contemplated paving was an abortive attempt to improve areas other than streets of Holyrood; it contemplated the improvement of streets bordering on the city limits; the resident owners of more than one-half of the property liable for taxation did within twenty days after June 22, 1949, file with the city clerk their protest in writing against the improvement; the resolution and ordinance were not adopted in the manner provided by law.

The petition further alleged ordinance No. 222 was void because the governing body had no authority to cause the improvements to be made; the finding in the ordinance that more than one-half

the resident owners of the property liable to be taxed had not filed their protest within twenty days was made by the governing body without sufficient information so that it could have been made in good faith; the legal requirements necessary to the passage of the ordinance had not been complied with; it sought to improve areas not a part of the city; it did not describe the general character of the improvement; the contracts the city was about to enter into were not authorized and would result in the creation of a public burden and the levy of an illegal tax; the contracts would violate the cash basis law and budget law of the state; the issue of bonds which the ordinances sought to authorize would cause the city to exceed its limit of bonded indebtedness; would cause the city to assume a liability for which no funds were available and the ordinance was premature, improvident and illegal.

The petition next alleged that the plaintiffs were the owners of property abutting the streets upon which the defendants by the ordinance had attempted to lay the foundation for the levy of an illegal tax; that their property would be affected and their burden as taxpayers would be unjustly and inequitably increased by it.

The answer of defendants was a general and specific denial. The answer further alleged that the resolutions and the ordinance were enacted in accordance with the statutes of Kansas, especially G. S. 1935, 12-601 and 12-602 and all the improvements provided would be located on the land described.

Plaintiffs' motion to strike some of the above allegations, their demurrer to the answers and the motion of plaintiffs for judgment on the pleadings were overruled.

When the action was tried on its merits there was a stipulation as to many of the facts and the court made findings to the effect that the resolutions and ordinance were adopted according to law; that the determination of the ordinance the resident owners of more than one-half of the property liable for taxation for said several improvements did not within twenty days from the last publication of said resolutions file with the city clerk of said city their protests against said improvements was not arbitrarily, capriciously or otherwise wrongfully made.

The trial court then made a finding as to each of the benefit districts as follows:

"Exhibit 'A'

| Resolution No. 8: | |
|---|---|
| (a) Total area | 413,375 square feet, |
| (b) Area owned by qualified protestants, | 200,966 square feet, |

Exhibit 'B'

| Resolution No. 9: | |
|---|---|
| (a) Total area | 319,615 square feet, |
| (b) Area owned by protestants | 127,055 square feet, |

Exhibit 'C'

| Resolution No. 10: | |
|---|---|
| (a) 1. Area privately owned property | 189,000 square feet, |
| 2. Area owned by City of Holyrood, | 21,000 square feet, |
| 3. Area owned by Atchison Topeka & Santa Fe, | 40,200 square feet, |
| (b) 1. Area owned by qualified protestants, | 116,541⅔ square feet." |

The court further found that the area owned by the city should be included in the determination of the total area of a benefit district; that School District No. 24 of Ellsworth county owned 44,475 square feet of property liable for taxation for improvements contemplated by Resolution No. 8; that the plaintiffs failed to establish that any of the area to be taxed for the improvements was outside the corporate limits of the city; that a protest was filed as to each of the proposed improvements, the protest being incorporated by reference.

The court concluded as a matter of law that the resolutions and ordinances were worded in substantial compliance with the statute; that School District No. 24 was not eligible to protest the improvements contemplated by Resolution No. 8; that the determination in the ordinance that no sufficient protest was filed was binding on the court in the absence of arbitrary, capricious or fraudulent conduct by the governing body; that the area owned by the city should be included in computing the total area of the benefit district.

After plaintiffs' motion for a new trial was overruled judgment was entered in accordance with the foregoing—hence this appeal.

The specifications of error are that the trial court erred in permitting the defendants to introduce in evidence withdrawals of protests, in concluding as a matter of law that the resolutions and the ordinances were duly adopted, in concluding that the land owned by the city should be included, in determining the total area of a benefit district, in determining as a matter of law that School District No. 24 was not eligible to protest the improvement contemplated by Resolution No. 8, in determining that the resident

owners of more than one-half of the property liable for taxation did not within twenty days of the publication of the resolution file their protests against the improvements, in that plaintiffs were not entitled to the relief sought, that Finding No. 3 and conclusions were contrary to the evidence, in not setting aside findings and conclusions and in not granting plaintiffs a new trial.

In their brief in this court plaintiffs argue first their demurrer to the answer and their motion for judgment on the pleadings should have been sustained because the resolution did not set out in any district the kind, character or nature of the work to be done so that a taxpayer could be able to foresee about what his tax burdens would be and thus be able to intelligently determine whether he wished to protest.

Provision for paving city streets is found in G. S. 1949, 12-601 tc 12-602. The first of these sections provides the cost of such paving shall be assessed to the property on each side of the street to the middle of the block. The next section 12-602, provides for a resolution of the governing body of the city declaring the contemplated work to be necessary. This resolution must be published for two weeks if published in a weekly paper. The section then contains a provision as follows:

". . . and if the resident owners of more than one-half of the property liable for taxation therefor shall not within twenty days from such last publication file with the clerk of said city their protest against such improvement, the governing body shall have power to cause such work to be done or such improvements to be made, and to contract therefor and to levy taxes as herein provided. . . ."

The remaining portion of the section contains provisions for levying the tax for paving intersections and making improvements on streets running along city owned property, with which we are not here concerned. The power of cities to make property liable for special improvements is found in the statutes. Generally it is held that a substantial compliance with the requirements of the statute is sufficient. (See *Newman v. City of Emporia*, 32 Kan. 456, 4 Pac. 815.)

*Bentley v. Gunn*, 125 Kan. 784, 266 Pac. 28, was a case where resident taxpayers sought to enjoin the governing body from proceeding with a repairing job. The authorities had proceeded under the section we are considering. One of the arguments of the plaintiff was that proceedings were bad because the resolution pro-

vided for recurbing and reguttering where necessary without speci-
fying where such resurveying and reguttering were necessary. We
said:

"The city had authority under section 12-602 of the Revised Statutes to
recurb and regutter where necessary. The failure of the resolution and of the
ordinance to specify where the recurbing and reguttering were necessary
did not render the proceedings so irregular as to render them subject to an
injunction at the suit of taxpayers owning property along the street."

The same reasoning would apply to this case, that is, in neither in-
stance did the resolution or the ordinance contain information that
would advise the taxpayers of the probable cost of the improvement
contemplated. The answer in each case is that such failure did
not render the proceedings bad because the statute did not require
such information to be in the resolution.

Plaintiffs next point out that the project covered by Resolution
No. 8, School District No. 24, owned 44,475 square feet of real
estate. The school district board filed, along with others, a pro-
test against the project. If the board had authority to do this, then
this protest, along with others, would have been more than fifty per-
cent of the real estate in that project. The trial court held it had
no such right. We have held in analogous cases that a county was
not a resident of the county seat where there was paving in front of
the courthouse square. (See *Osborne County v. City of Osborne,*
104 Kan. 671, 180 Pac. 233.) There we placed the decision on the
question of whether the county was a resident of the county seat.
We quoted the statute, now G. S. 1949, 77-201, subsection 23, as
follows:

'The term "residence" shall be construed to mean the place adopted by
a person as his place of habitation, and to which, whenever he is absent, he
has the intention if returning.'

Then we said:

"This definition cannot well be applied to a county, and a majority of the
court holds that, in the absence of statutory authority, express or implied, it
cannot be held that a county is a resident owner with the right to promote or
obstruct the making of improvements within a city in which it may happen to
own property."

*Dunsworth v. City of Hutchinson,* 109 Kan. 538, 199 Pac. 89, was
an action to enjoin paving under a statute which provided that in
cities of the first class having a population of over 25,000 no resolu-
tion to pave a street should be valid without a petition asking such
improvement signed by the resident owners of not less than half of

the feet fronting or abutting on such street. The petition met that requirement if the board of education of the city of Hutchinson was classified as a "resident owner" and by counting its signature to the petition. We referred to *Osborne County v. City of Osborne,* supra, and held:

"Under a statute requiring a petition for the paving of a street to be signed by the resident owners of one-half the property fronting upon it, the board of education, whose jurisdiction covers the city and certain attached territory, is not made a competent signer by virtue of one of its school sites abutting thereon."

In that case the board had signed a petition for the paving. In this case they had signed a protest against it. The same reasoning applies to each case. The question is whether the school district is a resident owner.

(See, also, *Bentley v. Gunn,* supra.)

Plaintiffs next point out that the city owned 14,000 square feet of real estate in the project described in Resolution No. 8. This project contemplated an improvement involving 413,374 square feet of real estate, including 14,000 square feet owned by the city. Protests were filed by the owners of 200,966 square feet in this project. Plaintiffs argue that the 14,000 square feet owned by the city should be deducted from 413,375 square feet in the entire project and if this were done there were protests from resident owners of more than fifty per cent of the real estate to be affected. We dealt with this question contrary to the argument of plaintiffs in *Palmer v. Munro,* 123 Kan. 387, 255 Pac. 67. There we said:

"The other contention made by plaintiffs is that the protest filed was sufficient to bar further steps towards the making of the improvement. That depends on whether the properties owned by the city and a school district are to be considered in determining whether the resident owners of more than one-half of the property subject to assessment for the proposed improvement have protested. It is conceded that if the grounds owned by the city and school district are to be counted, the protest was insufficient and on the other hand if they are not to be considered, the protest was adequate to stop the paving of the street.

"Whether public grounds like those belonging to counties, school districts and cities and used by them for public purposes are liable for special assessments for the improvements of streets, is not a new question in this state. In the early case of Commissioners of Franklin Co. v. City of Ottawa, 49 Kan. 747, 31 Pac. 788, the question was carefully considered and it was held that such grounds were subject to be assessed for street improvements the same as the property of other owners. That rule has been consistently recognized and followed since it was announced, a period of about thirty-five years."

Plaintiffs argue that some of the property sought to be taxed was not shown to be wholly within the city limits. The trial court found as a matter of fact that none of the area sought to be taxed for the improvement was outside the corporate limits. There was substantial evidence to sustain this finding and it will not be disturbed on appeal.

The judgment of the trial court is affirmed.