No. 39,711

In the Matter of the Adoption of ROBERT ELLSWORTH THOMPSON, a Minor Child. (HARLAN GILBERT and GENEVIEVE GILBERT, *Appellants,* v. GLENN LLOYD LANE and MARIE RUTH LANE, *Appellees.*)

(283 P. 2d 493)

Opinion filed May 7, 1955.

*Sam W. G. Lowe,* of Colby, argued the cause and *E. F. Beckner,* of Colby, was with him on the briefs for the appellants.

*Morris Moon,* of Augusta, argued the cause and was on the briefs for the appellees.

The opinion of the court was delivered by

SMITH, J.: This is a proceedings for adoption. The dispute is

between two married couples, each of whom wishes to adopt a particular baby. The trial court sustained the contentions of one of the couples and decreed the baby to be the adopted child of that couple. The other couple has appealed.

The dispute arose when Annetta Berdeen Leitner on April 7, 1954, consented to the adoption of her child by Mr. and Mrs. Lane. After the commencement of the adoption proceedings by the Lanes she attempted to revoke that consent and to give consent of adoption to Mr. and Mrs. Gilbert, who were her uncle and aunt. This led to the lawsuit we are considering. The consent to the adoption by the Lanes was given on April 7, 1954. On April 19, 1954, the Lanes filed a petition for adoption in the probate court of Butler county. They alleged their residence there, his employment and their ages and that they had no children; that the baby was the natural child of Berdeen by a person other than one to whom she was married; that the baby was under the control of Mr. and Mrs. Gilbert at Colby and they wrongfully refused to surrender him to petitioners, contrary to the express wish and demand of petitioners, and the natural mother. The written consent to the adoption was filed with the petition. They prayed that the court set the petition for hearing and grant the adoption of the minor child to them and make an appropriate order for the care and custody of the minor child. The matter was set for hearing on May 19, 1954 in the probate court of Butler county. The court also found that the Lanes should be granted the temporary custody of the minor child pending the hearing and that he should be surrendered to the sheriff of Thomas county, who should take into his custody the minor child and deliver him to the Lanes.

The Gilberts filed an answer to this petition. In this answer they alleged they were residents of Colby and were twenty-six and twenty-seven years old; that Berdeen was the natural mother of the baby and was the niece of Harlan Gilbert; that in the latter part of February, 1954 the mother voluntarily gave the custody and control of the baby to Anita and Myron Caster, her mother and father, and about the 28th of February, 1954, with her knowledge and consent they gave the care, supervision and control to the respondents at Colby; that they had a conversation with Berdeen in which the mother consented that they retain control and custody of the minor child and orally consented to the

adoption of the child by respondents at some future date; that on a date prior to the 12th of April, 1954 Annetta Berdeen Leitner gave a written consent to the Lanes for the adoption of the child; that that consent was given to the Lanes while the mother was confined in the county jail of Butler county for the commission of a felony and at the time she gave this consent she did not act freely for the reason she was under great emotional strain because of her being confined in the county jail awaiting trial and while she was pregnant; that on April 17, 1954 she executed a revocation of the consent of adoption to the Lanes which was attached to the answer and a consent of adoption and waiver of notice of hearing in favor of the Gilberts; that this consent awarded the control and custody of the baby to the Gilberts and gave them authority and permission to adopt him. They petitioned the probate court of Butler county for his adoption; that they bore a good reputation in the community in which they lived and Gilbert was regularly employed at a substantial income and was possessed of property and had sufficient financial resources to educate the child in a suitable manner and that they wished to adopt him. Copy of the revocation of consent to adoption was attached as an exhibit.

The consent to adoption and waiver of notice of hearing was signed by Berdeen before the probate court of Leavenworth county. It stated she consented to the adoption by any person determined by a court of competent jurisdiction to be proper. She further stated she consented to all adoption proceedings had or to be had and waived notice. She consented that the immediate possession of the child be delivered to the Gilberts. She and the father of the child had never been married and she had the sole and exclusive right to consent to the adoption.

The probate court made an order that Berdeen had consented to the adoption of the minor child by petitioners, that is, the Lanes, and that the consent of the natural father was not necessary; that the state board of social welfare had filed a report on the petition for adoption of petitioners therein and made no recommendation for adoption but found that the petitioners were proper persons to which an adoption might be granted.

The probate court made the following finding:

"The consent of the natural mother as filed by the petitioners herein should be and same is hereby allowed and accepted by this court and that the at-

tempted revocation of such consent was obtained after the filing of the petition herein and that said purported revocation should be and the same hereby is rejected; that the petition of Glenn Lloyd Lane and Marie Ruth Lane to adopt the child, namely Robert Ellsworth Thompson, is true and should be and the same is hereby allowed and approved, and that the said Robert Ellsworth Thompson be and he is hereby declared to be the adopted child of said petitioners, and that the name of said child be and the same is hereby changed to Robert Ellsworth Lane."

The judgment was that the Lanes should be entitled to the custody of the child and the Gilberts were ordered to surrender him to petitioners.

The Gilberts appealed to the district court. Berdeen filed an application for permission to interplead. She set out about the same matters set out in the petition filed in probate court by the Gilberts. She was at that time confined at the state industrial farm at Lansing. She was ordered to appear for trial and did appear.

The trial court found that the Gilberts had physical custody of the child; that the natural mother had consented to the adoption by the petitioners, the Lanes, and that the consent of the natural father was not necessary; that subsequent to the consent of the adoption by the petitioners the natural mother attempted to revoke that consent; that the attempted revocation was obtained after the order of the probate court directing the minor child be delivered to the petitioners; that the state board of social welfare had filed a report stating that the petitioners were proper persons to have the adoption; that the consent of the petitioners was valid and binding and they acted in good faith upon the consent and were proper and fit persons to adopt the child; that the consent of the mother for permission to adopt him should be allowed and the purported revocation of that consent was rejected and it was ordered that the Lanes adopt Robert. He was ordered surrendered to the Lanes.

The Gilberts filed a motion for a new trial for the reason that the verdict and decision of the court was in whole contrary to the evidence. This motion for a new trial was overruled. Hence this appeal.

The specifications of error are that the court erred in finding the consent to adoption given to appellees was valid; in failing to find the consent given to appellees was revoked by the natural mother; in holding that the consent to adoption given by the natural mother to appellants was invalid; in holding that the respondents should

immediately deliver the child to petitioners and in overruling respondents' motion for a new trial.

Actually the question is, whether Berdeen had power to withdraw her consent to the adoption by the Lanes before the probate court had acted on this petition. The question is a live one and various situations may arise—hence we will confine this opinion to the precise facts. We will assume the consent to the adoption by the Lanes was freely and understandingly given. It was given on April 7, 1954. The child was illegitimate and the consent was executed by his mother. This was sufficient. (See G. S. 1953 Supp., 59-2102.) The petition was filed on April 11, 1954. The consent was attached to the petition when it was filed. This was as it should be. (See G. S. 1953 Supp., 59-2278.) The petition was set for hearing on May 19, 1954. This was a proper time, that is, not less than thirty days, and not more than sixty days, from the date of filing. (See G. S. 1953 Supp., 59-2278.) The statute is rather important so it will be given here in full. It is as follows:

"The written consents required shall be filed with the petition. Upon the filing of the petition the court shall fix the time and place for the hearing thereon, which shall not be less than thirty (30) days nor more than sixty (60) days from the filing of the petition, which time may be extended by the court for cause. Notice shall be given to all interested parties, including, except when the petitioner is a stepparent, the state department of social welfare. Pending the hearing the court may make an appropriate order for the care and custody of the child. Promptly upon the filing of the petition by a petitioner who is not a stepparent the court shall, and when the petitioner is a stepparent the court may, send to the state department of social welfare, a copy thereof and of the consents. Upon receiving such copy, the state department of social welfare, without cost to the natural parents or to the petitioner, shall make an investigation of the advisability of the adoption and report its findings and recommendations to the court as much as ten (10) days before the hearing on the petition. In making its investigation the state department of social welfare is authorized to make an appropriate examination of the child as to its mental development and physical condition so as to determine whether there are obvious or latent conditions which should be known to the adopting parents, and shall also make such investigation of the adopting parents and their home and their ability to care for the child as would tend to show its suitability as a home for the child, and if requested to do so by the court, may inquire whether the consents to the adoption were freely and voluntarily made. Upon the hearing of the petition the court shall consider the report of the state department of social welfare, together with all other evidence offered by any interested party, and if the court is of the opinion the adoption should be made it shall make a final order of adoption, and shall deliver the child to the petitioner, if that has not already been done. In any

event the costs of the adoption proceedings, other than those caused by the state department of social welfare, shall be paid by the petitioner."

Relying on the provision "pending the hearing the court may make an appropriate order for the care and custody of the child," the probate court in the same order setting the proceedings for hearing ordered temporary custody of the child to be given the Lanes. This order was not complied with by the Gilberts but that is of no concern to us here. On April 17, 1954, Berdeen, in an instrument properly executed by her while she was at the industrial farm for women at Lansing, revoked the consent for adoption she had given the Lanes on April 7, 1954. She recited in it that she had that same day given consent to the adoption to the Gilberts; that she had given the consent to the Lanes without knowing all the facts involved, and it was her sincere desire that her minor child be adopted by her uncle Harlan Gilbert and his wife. At the same date she executed an instrument in which she first recited she consented to adoption of her child by any person or persons to be determined by a court of competent jurisdiction. In the second paragraph of this instrument she waived any notice. In the third she consented that immediate possession of the child be delivered to the Gilberts and recited the child was by her delivered to them and they were by her awarded the care and custody of him. In the last paragraph she recited that she and the father of the child were unmarried. Both the above instruments were executed on April 17, 1954. They were both duly filed in the probate court of Butler county. The date of their execution was ten days after the date of the consent of the Lanes. Up to this time the probate court of Butler county had taken no action other than to set the proceedings for hearing on May 19, 1954, and to issue the order for temporary custody of the baby to be given the Lanes pending the hearing. We have already set out the various pleadings filed in the probate and district court.

We come now to the legal question. The venue of adoption proceedings is in the probate court where the adopting parents reside. (See G. S. 1949, 59-2203.) Hence if the so-called revocation of consent executed by Berdeen and filed in the Butler county court had any force, it ousted that court of jurisdiction to make any adoption order at all.

Adoption is a statutory matter. Our legislature has paid considerable attention to it lately. The present statute was enacted

in 1953. (See Chapter 275, Laws of 1953.) The last amendment before that was Chapter 344, Laws of 1951, and before that Chapter 180, Laws of 1939, Section 254. The state department of social welfare was first given an important role in adoption proceedings by Chapter 180, Laws of 1939.

The section on procedure already quoted first requires (1) the written consents shall be filed with the petition for hearing; (2) notice; and (3) the making of a temporary order for custody pending the hearing. All these provisions are simply provisions for putting the machinery of the court into action. The statute then provides for bringing the state department of social welfare into the case; for an investigation by it of the advisability of the adoption; for an examination of the child as to its mental and physical condition; and for an investigation of the adopting parents. The section then contains a provision:

"And if requested to do so by the court, may inquire whether the consents to the adoption were freely and voluntarily made."

The section then has a provision as follows:

"Upon the hearing of the petition the court shall consider the report of the state department of social welfare, together with all other evidence offered by any interested party, and if the court is of the opinion the adoption should be made it shall make a final order of adoption. . . ."

The provision to the effect the department may inquire whether the consents were freely and voluntarily made was evidently intended by the legislature to provide that there should be no finality or binding force to the consents until after the department had made its report and the court was ready to finally hear and determine the proceedings.

To conclude otherwise would be to fail to give effect to what appears to us was the intention of the legislature. There are authorities from other states on both sides of this question. Some of the later ones have stated there is a tendency amongst recent decisions to hold that where a natural parent has freely and knowingly given requisite consent and the proposed adopting parents have acted upon it by bringing adoption proceedings, the consent is ordinarily binding upon the natural mother and cannot be arbitrarily withdrawn so as to bar the court from decreeing the adoption.

We have examined the authorities furnished us. Two late cases have followed the rule announced above. The fact they were

later in point of time from other decisions is not too persuasive to us. We are inclined to examine each opinion on its own.

In *In re White*, 300 Mich. 378, 1 NW (2d) 579, 138 A. L. R. 1034, the supreme court of Michigan in substance held:

> A mother consenting to the adoption of a child may withdraw such consent, without the necessity of showing fraud or duress, at any time within the period allowed by statute for the filing of a petition for a rehearing in the adoption proceedings, at least where no vested rights have intervened.

The court referred to *State ex rel. Platzer v. Beardsley* (1921), 149 Minn. 435, 183 NW 956, where is was held the mother's consent might be revoked at any time before the child was legally adopted. There is a comprehensive note on the subject in 138 A. L. R. 1038. It is pointed out the rule in a majority of the jurisdictions was that where the question had arisen the natural parent's consent to a proposed adoption of a child duly given in compliance with the statute requiring such consent as a prerequisite to the adoption might be withdrawn or revoked by the natural parent before the adoption had been finally approved.

The following cases are cited to support this rule: *In re White*, 300 Mich. 378, 1 NW (2d) 579; 138 A. L. R. 1038; *In re Nelms* (1929), 153 Wash. 242, 279 P. 748; *State ex rel Platzer v. Beardsley* (1921), 149 Minn. 435, 183 NW 956; *In re Adoption of Anderson* (1933), 189 Minn. 85, 248 NW 657; and *Fitts v. Carpenter* (1939) (*Tex. Civ. App.*) 124 SW (2d) 420.

In *Wyness v. Crowley* (1935), 292 Mass. 461, 198 NE 758, the rule was held to be the other way.

There is another case dealing with this rule in 156 A. L. R. at page 1001. This is *Re Adoption of a Minor*, United States Court of Appeals, District of Columbia, July 17, 1944, (79 App. D. C. 191, 144 F. (2d) 644). There it was held that a consent freely given could not be withdrawn. The note following this case gives cases from other states where the rule has been stated that a consent could not be withdrawn.

In *French v. Catholic Community League* (1942), 69 Ohio App. 442, 44 NE (2d) 113, the court held that consent could be withdrawn. There the court made reference to other instances in the law where an individual may withdraw his consent and approval at any time before a public body had acted upon it. Such is a well-established rule in this jurisdiction in *Bentley v. Gunn*, 125 Kan. 784, 266 Pac. 28. We held names could be withdrawn from a protest signed by property owners if filed before the pro-

test was acted on. We cited *The State, ex rel., v. Eggleston,* 34 Kan. 714, 10 Pac. 3; *Hay v. Dorn,* 93 Kan. 392, 144 Pac. 235.

In case of a consent judgment the consent to the judgment may be withdrawn prior to the entry. (See 49 C. J. S. 312.)

The rule seems to be universal that any consent may be withdrawn at any time before a public body has acted on it or the rights of a third party have intervened. In adoption cases nearly all courts have chosen to play on the heartstrings with a discussion of the welfare of the child and the general circumstances that surround an adoption proceedings. There is much that might be said here about the welfare of the child. We choose, however, to place the decision upon the rule that the consent of Berdeen given on the 7th of April, 1954, to the adoption of her child and not acted upon by the probate court might be withdrawn by her for any reason which to her appeared good.

It follows the judgment of the district court of Butler county is reversed. Since the residence of the adopting parents is the venue of the adoption proceedings there will no longer be any proceedings concerning this child pending in Butler county. The case is reversed with directions that the probate court be ordered to dismiss the adoption proceedings.